Nos. 121,593
122,389

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

Yudi Hernandez
(Stephen Brave),
*Appellant*,

v.

Brad Pistotnik and
Brian Pistotnik,
*Appellees*.

SYLLABUS BY THE COURT

1.

The right to appeal is statutory, and appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. This court has a duty to question the existence of jurisdiction on its own initiative. If the record shows that jurisdiction does not exist, we must dismiss the appeal.

2.

A trial court lacks jurisdiction to modify a judgment after it has been appealed and the appeal is docketed at the appellate level. But a district court retains jurisdiction over collateral matters, such as whether to unseal a record, even after parties have appealed a judgment.

3.

As long as a protective order remains in effect, the court that entered the order retains the power to enforce the order, even if the underlying suit has been dismissed. But

1

the district court has no authority to impose new affirmative discovery requirements on the parties if the underlying action is concluded.

4.

A district court's postjudgment decisions enforcing a protective order are final decisions from which an appeal may be taken.

5.

We interpret K.S.A. 2020 Supp. 60-2103(b) liberally to ensure justice in all proceedings and generally consider whether a party has been prejudiced by a defendant's timely filed but otherwise faulty notice of appeal.

6.

A notice of appeal is legally sufficient when it substantially complies with the requirements of K.S.A. 2020 Supp. 60-2103(b) specifying the parties taking the appeal, the judgment appealed from, and the name of the appellate court to which the appeal is taken.

7.

A party who does not claim to have been prejudiced by a protective order or any ruling based on it lacks standing to appeal a postjudgment order enforcing the protective order.

8.

Where sanctions have been imposed against counsel rather than a party, counsel is the proper party to appeal, contesting those sanctions.

9.

K.S.A. 2020 Supp. 60-237(a) gives a district court authority to require the losing party to pay the expenses incurred in relation to a motion to enforce a protective order.

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed July 23, 2021. Affirmed in part and dismissed in part.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*N. Russell Hazlewood*, *Donald N. Peterson II*, and *Nathan R. Elliott*, of Graybill & Hazlewood LLC, of Wichita, for appellees.

Before ATCHESON, P.J., GARDNER and WARNER, JJ.

GARDNER, J.:  This appeal challenges several postjudgment rulings the district court made regarding a protective order it entered before granting summary judgment for defendants Brad and Brian Pistotnik. But those rulings, which include sanctions against plaintiff's attorney Stephen Brave, occurred while the district court's summary judgment decision was on appeal. We must thus address a number of procedural issues, including our jurisdiction to hear this appeal. Finding we have jurisdiction, we find part of the appeal moot and find no abuse of discretion in the postjudgment sanctions orders.

FACTUAL AND PROCEDURAL BACKGROUND

Yudi Hernandez was 17 years old when she was in a car accident that left her severely injured. While she was in a coma, her father, Ernesto Hernandez, hired the Affiliated Attorneys of Pistotnik Law Offices (AAPLO) on Yudi's behalf to pursue a bodily injury claim against the drivers of the vehicles involved in the accident. Brad and Brian Pistotnik, brothers, worked as attorneys for AAPLO at the time.

Brian worked on Yudi's case and, while doing so, received settlement offers from the liability insurers of the drivers involved in the accident for $150,000. But Ernesto fired AAPLO before accepting these offers. Ernesto then hired Brave, a former AAPLO employee who had started a competing law firm. Yudi and Ernesto, through Brave, then entered into settlement agreements for the same amount previously offered to Brian.

Shortly after Ernesto fired AAPLO, Brian filed a notice of attorney's lien for the firm and served it on the liability insurers. That lien sought costs and attorney fees against any funds, proceeds, or monies payable to Yudi. Brian later sued Ernesto in 16 CV 172 to recover the amount sought in the lien. Yudi, represented by Brave, then filed this case—16 CV 285—and sued Brian and Brad for fraud and violation of the Kansas Consumer Protection Act (KCPA) based on Brad's allegedly misleading television advertisements. Brave has filed several lawsuits against Brad, Brian, and AAPLO on behalf of his clients and himself.

The district court partially consolidated those two cases (16 CV 172 and 16 CV 285) for discovery purposes. Several discovery disputes arose throughout the litigation of Yudi's case. Ultimately, the district court granted summary judgment in favor of Brad and Brian, which another panel of this court affirmed. *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 472 P.3d 110, *rev. denied* 312 Kan. 891 (2020). Although Yudi's case has now concluded, a protective order filed during her case spawned postjudgment litigation about its enforcement. The district court's orders resolving those disputes give rise to this appeal.

*The Protective Order*

Discovery disputes arose early in Yudi's case. The parties made several competing requests in the district court to either allow broad use of deposition material (Brave's position) or to preclude or limit discovery of materials and information that contained

trade secrets or other confidential information (Brad's position). Brad moved for a protective order, and the district court entered a protective order limiting or precluding use of confidential materials.

Later, in anticipation of his upcoming deposition, Brad filed an amended motion for a protective order. He argued that if Brave deposed him, Brave would use the information to embarrass and harass him in other cases or to find new plaintiffs to file additional lawsuits against him. Judge David Dahl entered an amended protective order classifying Brad's deposition as confidential and prescribing the procedure for its dissemination and use. The amended protective order provided:

- The parties were to treat the deposition transcripts as "'Confidential Discovery Material' regardless of whether any party designate[d] them as such."
- Brave could depose Brad but could not seek confidential information or information irrelevant to Yudi's claims.
- Brave could not use the information for extraneous purposes or in cases other than this case (16 CV 285) and 16 CV 172.
- If Brave thought certain portions of the deposition were not confidential, he had to designate the specific pages and lines he believed were discoverable. Brave would then give his designations to all other counsel and identify the people he intended to reveal the information to and for what purpose. Brad would respond to Brave's designations within one week. If the parties could not agree, they had to return to court for a resolution.

*Brave's Motion to Determine Confidentiality*

After Brad's deposition, Brave moved the district court in December 2016 to determine what parts, if any, of that deposition were confidential. Brad responded that Brave had made no designations, although designations were required by the protective

5

order, so Brad refused to counter-designate any part of his deposition transcript as confidential.

At a January 2017 hearing on this issue, Brave maintained that nothing in the depositions was confidential and that the entire transcript of Brad's deposition was discoverable. Judge Dahl set the matter for a hearing in February 2017, but the record does not show that he made any decision before recusing himself from Yudi's case in December 2017.

Judge William Woolley took Yudi's case after Judge Dahl recused. But he did not consider the merits of Brave's motion to determine the confidentiality of the deposition transcript until April 2019—almost six months after Yudi appealed the court's summary judgment decision.

*Summary Judgment in Yudi's Case*

In August 2018, Brad moved for summary judgment on Yudi's claims. His brief in support of his motion attached as an exhibit excerpts from the parties' depositions, including his own. The district court granted summary judgment for Brad and dismissed Yudi's claims of fraud and KCPA violations.

Yudi appealed the district court's summary judgment ruling, but this court affirmed it. *Hernandez,* 58 Kan. App. 2d 501. The panel did not consider any issues related to the use of Brad's deposition, however, as neither party raised that issue in the appeal of Yudi's case. Nor did the panel rely on Brad's deposition in resolving the issues on appeal.

*Postjudgment Litigation over Brad's Deposition*

After Yudi perfected her appeal, Brave raised several postjudgment challenges to the protective order to try to declassify Brad's deposition and add the entire deposition transcript to the record on appeal. (On November 1, 2018, Brave filed a notice of appeal and docketing statement challenging the summary judgment ruling.) Brave maintained that the only reason he sought declassification was so he could use Brad's deposition to help make his appellate arguments in Yudi's case. But it became apparent that Brave also wanted to use Brad's deposition transcript in two of Brave's other lawsuits against Brad:

- In *Eby v. Pistotnik, et al*, 18 CV 1610, Brave represented a client who sued Brad alleging false advertising, making claims like those made in Yudi's case.
- In *Brave Law Firm, LLC v. Truck Accident Lawyers Group, Inc.*, 17-1156-EFM-JPO, 2020 WL 707847, at *7 (D. Kan. 2020), *aff'd* 843 Fed. Appx. 134 (10th Cir. 2021), Brave represented several clients in a federal Lanham Act case against Brad and others, alleging false advertising regarding settlement recovery sums.

Brad objected to each of Brave's attempts to declassify the transcript or to add it to the record. He moved four times to enforce the amended protective order. We summarize those disputes below.

*Brad's first motion for protective order*

At a hearing in December 2018, the district court considered whether Brave could add copies of AAPLO settlement agreements, related emails, and the transcript of Brad's deposition to the record on appeal. Brave argued that the district court lacked the authority to deny an appealing party's request for additions to the record on appeal. But the district court correctly noted that it did not have to include documents that were not

7

part of the trial record. The district court found that the settlement agreements were not a part of the trial record and denied Brave's request to add them to the appellate record.

But the district court found that Brad's deposition testimony was part of its record because it had been used as an exhibit to the parties' summary judgment filings. So the court granted Brave's request to add all of Brad's deposition transcript to the record on appeal, as long as it remained under seal.

Brad's proposed order journalizing that hearing provided, however, that only the portions of the transcript that the parties had submitted to the district court in their summary judgment filings were a part of the district court record, so only those portions would be part of the appellate record. Brave objected to the proposed order, arguing that the district court's order had included the entire transcript. The district court had to intervene and again held that Brad's entire deposition transcript could be added to the record on appeal.

But before the district court filed its written order, Brave moved a second time to allow the additions to the appellate record. He then delivered Brad's deposition transcript to the Clerk's Office in the Kansas Judicial Center for immediate filing but failed to notify the Clerk that the transcript was confidential or subject to a protective order, thus meriting protection from public dissemination. As a result, Brad's entire deposition transcript was filed without being sealed.

Brave's actions prompted the district court to sua sponte reconsider its ruling on Brave's request to add the deposition to the record. The day after Brave filed the unsealed transcript in this court, the district court amended its ruling on Brave's request for additions to the appellate record. The district court held that as for deposition transcripts, the record could include only the excerpts that the parties had provided to the district court in their summary judgment filings. And in a supplemental order, the district court

explained that its reason for that ruling was Brave's breach of his promise to ensure that the transcript would be sealed. The district court then ordered Brave to swiftly retrieve the transcript of Brad's deposition from the Clerk.

Soon after, Brave moved to remove the confidential classification of Brad's deposition in *Eby*. Brave then amended his second motion to add the transcript to the record on appeal in Yudi's case, asking to add only specific pages. He stated that he had given the clerk of the district court a copy of the pages he had requested, the district court's supplemental order on his request to add the deposition, and instructions on how to file the materials. If filed, the record indicates the transcript might also become a part of the record in *Eby*, which was being litigated in front of Judge Deborah Hernandez Mitchell, as evidenced by a related motion to compel filed in *Eby*.

Brad objected to Brave's motion, arguing Brave was requesting more of the transcript than the district court had in the parties' summary judgment filings, thus violating the district court's recent orders. So the district court held another hearing. It found that it retained sole jurisdiction to determine the confidentiality of Brad's deposition. The district court ordered Brave to raise any claims about the discoverability of Brad's deposition in *Eby* only to the presiding judge in that case.

After receiving a seemingly agreed motion to take up the deposition issue again, the district court set Brave's December 2016 motion to determine what parts of Brad's deposition should be considered confidential for a hearing in April 2019. The court ordered the parties to confer before the hearing and prohibited them from simply arguing that the entire transcript was or was not discoverable.

The day of the hearing, Brave supplemented his 2016 motion by arguing that Brad had waived protection of the deposition and its confidential classification by disclosing it in his Rule 26 disclosures in the Lanham Act case. At the hearing, Brave argued:

- Brad's deposition did not contain confidential information; and
- the district court erred in limiting the deposition transcript record to only certain pages because Brad's mention of his deposition in his Rule 26 disclosures meant his entire deposition could be used.

Brad countered that the deposition contained confidential information, that he had not waived its confidential designation, and that he was not going to use the deposition in his favor in the Lanham Act case. He added that his Rule 26 disclosures would not cause the type of public dissemination that would likely result if Brave were given untethered ability to use the information for purposes unrelated to Yudi's case. Brad thus asked the district court to continue to enforce the protective order to ensure Brave did not use his deposition for extraneous reasons. Brad's later response included an excerpt showing the disclaimer he had filed with his Rule 26 disclosures in the Lanham Act case. That disclaimer stated Brad had made his Rule 26 disclosures without waiving the ability to object to the use of the materials for any purpose or in any other case.

Ultimately, the district court found:

- Brad's entire deposition transcript was confidential and was subject to the protections of its amended protective order;
- Brad had not waived the protections of the protective order by listing his deposition transcript in his Rule 26 disclosures in the Lanham Act case;
- Brave's intent to use the deposition in other cases or to humiliate Brad contradicted the purpose of discovery; and
- Brave failed to meet his burden of proving that general disclosure would not harm Brad.

The order also noted that Judge Woolley had been permanently assigned to *Eby* in place of Judge Mitchell, and that if Brad's testimony in that case was materially different than in Yudi's case, it would revisit this issue. Yudi appeals this decision.

*Brad's second motion to enforce the protective order*

Brave then filed a document titled "Notice of Compliance with Paragraphs 3(a) and 17 of Judge Dahl's November 15, 2016, Amended Protective Order." In it, Brave claimed that he complied with the amended protective order, citing acts by the attorney who represented Brad in the Lanham Act case as evidence that Brad's deposition was discoverable in Yudi's case. Brave had disclosed Brad's deposition transcript to persons he did not identify.

Brad responded by moving a second time to enforce the protective order. At the May 2019 hearing, Brad told the district court that after it had ordered Brave to retrieve Brad's deposition transcript from the appellate court record after he filed it unsealed, Brave emailed Brad saying he planned to attach the entire transcript as an appendix to his appellate brief. As the hearing progressed, Brave became combative. The district court told Brave that he was in a "custodial interrogation" and ordered him to disclose the persons to whom he had given the transcript. But Brave refused to do so, invoking his Fifth Amendment right against self-incrimination.

At the close of the hearing, the district court assessed the costs of the hearing (Brad's attorney fees) against Yudi in the amount of $2,100, because Brad's motion succeeded and "should not have been necessary." In its written order, the district court changed its ruling to assess the fees directly against Brave and not against Yudi. Yudi appeals this decision.

11

*Brad's third motion to enforce the protective order*

In June 2019, the district court considered Brad's third motion to enforce the protective order. Brad had subpoenaed Yudi to testify at the hearing based on his concern that Brave was not making her fully aware of the ongoing litigation on her already dismissed claims and of the possibility that additional costs and fees could be assessed against her. Brave moved to quash Yudi's subpoena, arguing her presence was unnecessary.

While considering the parties' arguments, the district court questioned Brave about Yudi's interest in allowing litigation over the protective order to continue in her case on appeal when the issue was more pertinent to ongoing proceedings in *Eby*. Although Brave had already filed Yudi's appellate brief, Brave maintained that the record on appeal was an ongoing issue in Yudi's case. Brave also argued that Yudi wanted to pursue the issue because if Brave could use the transcript in the Lanham Act case, Yudi might benefit from that ruling if this court remanded Yudi's case.

The district court then questioned Yudi without placing her under oath. The district court asked Yudi whether she understood what was going on in her case and whether she understood that costly fees could be assessed against her. Yudi responded affirmatively and said that she did not have any questions. Brad asked the district court to ask whether Yudi knew about the district court's recent rulings in *Eby*. Brave objected, saying he had not sent Yudi a copy of that order. The court printed a copy of the order for Yudi to take with her, then released Yudi from Brad's subpoena and quashed it.

The district court then granted Brad's third motion to enforce the protective order, finding that nothing pending in Yudi's case would require using Brad's deposition transcript on appeal. The court also found it unnecessary to permit use of the transcript in *Eby* or the Lanham Act case because Brad could be deposed in those cases. But the

district court modified that decision in October 2019 by allowing Brave to seek permission from the federal judge presiding over the Lanham Act case to use the deposition transcript in that case if it were kept under seal. Yudi appeals that decision.

*Brad's fourth motion to enforce the protective order*

In violation of the district court's order granting Brad's third motion to enforce the protective order, Brave supplemented his Rule 26 disclosures in the Lanham Act case by attaching a copy of Brad's entire deposition transcript and serving it on Brad's attorney in that case (Richard Olmstead). The next month, Brave emailed Olmstead and the district court expressing his intent to file the deposition transcript in the Lanham Act case. And a few days later, Brave moved to file the transcript as a sealed exhibit in that case.

Brad responded by moving a fourth time to enforce the protective order. Brad also moved for a show cause order requiring Brave to state why he should not be held in contempt for having violated the district court's orders. The district court issued the show cause order, held a hearing, and reminded Brave that it had already found that Brad had not waived protection of his entire transcript in the Lanham Act proceedings. The district court also told Brave that the federal judge assigned to the Lanham Act case could not overrule his discovery orders.

The court explained the purpose of the protective order, the orders enforcing it, and the reason this issue was being hotly disputed:

> "[T]he purpose of the [discovery] orders were, number one, [Brave] shouldn't be using and taking depositions in one case for the purpose of creating litigation and using it in other cases. That's a wrongful purpose of the discovery process; you know, each case should be individual and separate.
>
> . . . .

"[T]he problems have not been in this case, or in 285 and 172 or in the *Eby* case. . . . The problem has been the demonstration of you repeatedly to use it beyond the protections of the protection order.

"So, you know, if you can't be trusted to comply with the protections of the protection order, then we—I narrowed the protection order to make sure that we're not constantly coming back in here with the attempt to weasel around the language of whatever Judge Dahl said or whatever I said.

. . . .

"[T]he purpose of what we have been doing here was the demonstration to me that you have intended to use—the discovery that's been obtained in this case for reasons other than just winning the case for . . . [Yudi] or doing discovery in . . . [Yudi's case] for the purposes of trying to use it in other cases yet to be determined."

The district court granted Brad's fourth motion in part and denied it in part. It partially granted Brad's motion by precluding Brave from simply filing Brad's deposition transcript in the Lanham Act case. Yet it partially denied Brad's motion by allowing Brave to seek permission from the federal court to use Brad's sealed deposition transcript in the Lanham Act case.

The court also granted Brad's request for attorney fees against Brave:

"The circumstances of the motion, and I read the motion, were definitely good faith. And given the history of circumstances regarding the use of Brad Pistotnik's transcript in every conceivable context plus some that I haven't thought of, and given the circumstances of what is happening over in the Lanham Act case, where normally you shouldn't have to come over here and argue this. . . . This was very necessary and it shouldn't have needed to be necessary. So, yeah, I'm granting the motion for attorney fees, 10 hours at $300 an hour."

The district court assessed attorney fees of $3,000 against Brave and noted that the protective order was still in place. Yudi appeals this decision.

14

I.     THIS COURT HAS JURISDICTION TO CONSIDER THIS APPEAL.

The unusual procedural posture of this case presents several jurisdictional issues that we must consider before reaching the merits of the issues on appeal. The first is whether we have jurisdiction to consider the appeal of the district court's orders.

The right to appeal is statutory, and appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). This court has a duty to question the existence of jurisdiction on its own initiative. If the record shows that jurisdiction does not exist, we must dismiss the appeal. 304 Kan. at 84-85.

A. *The District Court Had Continuing Jurisdiction to Enforce its Protective Order.*

We first address whether the district court had the authority, while Yudi's case was on appeal, to enter orders enforcing or addressing its protective order.

The general rule is:  "'A trial court does not have jurisdiction to modify a judgment after it has been appealed and the appeal [is] docketed at the appellate level.' *In re Estate of Robinson*, 232 Kan. 752, 754, 659 P.2d 172 (1983)." *ARY Jewelers, L.L.C. v. Krigel*, 277 Kan. 464, 473-74, 85 P.3d 1151 (2004).

> "The general rule in both civil and criminal cases . . . is that the docketing of an appeal divests the district court of jurisdiction to modify a judgment. See *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009) (for both the rule and certain exceptions); *State v. Smith*, 278 Kan. 45, 51, 92 P.3d 1096 (2004). A district court, 'while retaining broad discretionary power to reexamine its rulings, must act prior to the time an appeal from a final judgment has been docketed in the appellate court; otherwise the [district] court loses jurisdiction to reconsider or change its prior ruling during the pendency of the

15

appeal.' *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 15, 687 P.2d 603 (1984)." *Bryant v. State*, No. 109,387, 2014 WL 1363101, at *2 (Kan. App. 2014) (unpublished opinion).

Neither party is seeking by this appeal to modify the district court's summary judgment ruling in Yudi's case. Rather, both parties argue only discovery-type issues related to the district court's rulings on postjudgment motions relating to the protective order the court entered prejudgment.

Our appellate courts recognize several exceptions to the general rule that the district court loses jurisdiction upon docketing of an appeal. For example, the Kansas Supreme Court has held that the trial court retains jurisdiction to allow attorney fees and expenses while a case is on appeal.

"A trial court does not have jurisdiction to modify a judgment after it has been appealed and the appeal [is] docketed at the appellate level. *Darnall v. Lowe*, 5 Kan. App. 2d 240, Syl. ¶ 8, 615 P.2d 786 (1980). However, this rule does not stay other proceedings before the lower court. *Carr v. Diamond*, 192 Kan. 377, 379, 388 P.2d 591 (1964). As noted in *Fields v. Blue Stem Feed Yards*, 195 Kan. 167, 403 P.2d 796 (1965), reiterating *Carr*, 192 Kan. at 379:

'"*An appeal to this court does not of itself operate as a stay of further proceedings in the trial court.* The filing of a supersedeas bond . . . will stay the execution of a final judgment but it does not stay other proceedings in the trial court.'" 195 Kan. at 170 (Emphasis supplied.)

"The district court's order of January 25, 1982, allowing compensation pursuant to K.S.A. 59-1504, did not alter or modify the appealed orders concerning admission of the two wills. Allowance of attorney fees and expenses is a distinct 'other proceeding' and, therefore, the trial court had jurisdiction to hear and determine the petition seeking such allowance." *In re Robinson's Estate*, 232 Kan. 752, 754-55, 659 P.2d 172 (1983).

Our court has recognized other exceptions to the general rule, agreeing that an appeal in a civil case does not prevent the district court from ruling on matters independent of the judgment.

> "For example, an aggrieved heir might appeal the district court's order admitting a will to probate, but that appeal does not prevent the district court from supervising necessary steps in the administration of the estate not dependent on the will. For another, an aggrieved former spouse might appeal a property division order in a divorce decree, but that appeal does not prevent the district court from subsequently modifying, on changed circumstances, child support or residential placement of a child." *Bryant*, 2014 WL 1363101, at *2.

Our courts have not addressed whether discovery disputes may be such an exception. However, federal courts that base appellate jurisdiction on final decisions, as we do, have applied an exception relevant to discovery disputes, finding that a district court retains jurisdiction over collateral matters and can consider whether to unseal a record even after parties have appealed a summary judgment order:

> "'The courts of appeal . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States.' *See* 28 U.S.C. § 1291. 'Once a notice of appeal is filed, the district court is divested of jurisdiction over matters on appeal.' *State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999). However, 'we have held that a district court retains jurisdiction over collateral matters, such as attorney's fees or sanctions, while an appeal is pending.' *Id.* at 1107 n. 3. '[T]he right of access to judicial records and documents is independent of the disposition of the merits of the case.' *Stone v. Univ. of Md. Medical Sys. Corp.*, 855 F.2d 178, 180 n. * (4th Cir. 1988). Thus, the district court was permitted to consider whether to unseal the record despite FFCC's filing of a notice of appeal in this case challenging the grant of summary judgment to Lonza, which was a final and appealable decision." *FutureFuel Chemical Co. v. Lonza, Inc.*, 756 F.3d 641, 648 (8th Cir. 2014).

17

The reasoning of *FutureFuel* is that unsealing records is an independent, collateral issue to the merits of a summary-judgment decision, so a district court retains jurisdiction over a motion to unseal. That reasoning is sound.

It is widely recognized in federal courts that "[a]s long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); see, e.g., *United States v. Pickard*, 733 F.3d 1297, 1300-01 & n.2 (10th Cir. 2013) (recognizing that district courts have continuing jurisdiction to enforce sealing orders and to grant access to sealed documents "even if the case in which the documents were sealed has ended"); *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1268 (10th Cir. 2006); *Stone v. University of Md. Medical System Corp.*, 855 F.2d 178, 180 n.* (4th Cir. 1988); *In re "Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145 (2d Cir. 1987). We adopt that rule here.

Under that rationale, it does not matter whether fees are awarded under a prevailing party statute or rather are awarded as a sanction; because both awards are collateral to the merits of the action, the district court retains jurisdiction to consider attorney fees.

> "The plaintiff alleges next that after he filed his notice of appeal, the district court was deprived of jurisdiction and therefore possessed no power to grant the Rule 37 motion. This argument lacks merit. Although filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, *see Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985), the district court retains jurisdiction over 'collateral matters not involved in the appeal,' *Garcia v. Burlington Northern R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). Attorney's fees awards are collateral matters over which the district court retains jurisdiction. *See id.* ('[E]ven after a timely notice of appeal is filed, a district court may retain jurisdiction to

18

determine the propriety and amount of attorney's fees.'); *Smith v. Phillips*, 881 F.2d 902, 905 n. 9 (10th Cir. 1989) ('Even after an appeal has been taken the district court may consider applications for attorneys' fees because they are considered wholly collateral to the merits . . . .') (citing, *inter alia*, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200, 108 S. Ct. 1717, 100 L. Ed. 2d 178 (1988)). While the cases typically discuss attorney's fees awards in the context of statutory grants of attorney's fees to the prevailing party, *see*, *e.g.*, *Budinich*, 486 U.S. at 197, 108 S. Ct. 1717, we see no basis to distinguish those cases from one like the present case in which fee awards are granted as sanctions. In either context, the award is collateral to the merits of the underlying action. Accordingly, we conclude the district court had jurisdiction to grant the Rule 37 motion." *Lancaster v. Independent School Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998).

Although the district court may enforce a protective order postjudgment, it cannot impose new affirmative discovery requirements on the parties if the underlying action is concluded. *Springs v. Ally Financial Inc.*, 657 Fed. Appx. 148, 151 (4th Cir. 2016) (unpublished opinion) (finding a district court retains jurisdiction to enforce the judgment but cannot alter or enlarge its scope pending appeal). "[M]odification of a protective order, like its original entry, is left to the discretion of the district court." *United Nuclear Corp.*, 905 F.2d at 1427. A district court has the power and discretion to modify a protective order, but when the underlying controversy is no longer alive, "the court simply lack[s] power to impose any new, affirmative requirements on the parties relating to discovery." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 781 (1st Cir. 1988). See *City of Cookeville v. Upper Cumberland Elec.*, 484 F.3d 380, 394 (6th Cir. 2007).

We find this reasoning sound and we adopt this exception. As long as a valid protective order remains in effect, the district court that entered it retains the power to enforce it without expanding it, even if the underlying suit has been dismissed or is on appeal. The district court's orders here did not enlarge the scope of the protective order or impose any new, affirmative requirements on the parties—they merely enforced the plain language of the existing protective order, as it had the power to do.

19

B. *The District Court's Postjudgment Orders Are Final Decisions.*

We next determine whether the district court's postjudgment decisions about the protective order are final decisions for purposes of an appeal.

By statute, an appellate court may generally take an appeal only from a final decision. K.S.A. 2020 Supp. 60-2102(a)(4). Although exceptions to that rule exist, none applies here. Generally, "[a] final decision is one that finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 1, 836 P.2d 1128 (1992). Yudi's case reached final decision in 2018 when the district court filed its journal entry granting summary judgment for Brad on Yudi's claims of fraud and violation of the KCPA. Yudi appealed that final judgment in November of 2018, and a panel of this court affirmed that decision in 2020, as noted above.

Typically, we do not consider a discovery order a final decision which a party can appeal as a matter of right. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 610, 244 P.3d 642 (2010). But that is because discovery orders are usually made during the progress of the case before a final decision is reached, thus they "can be reviewed and corrected when final judgment is entered by including them in the appeal from the final judgment." *Reed v. Hess*, 239 Kan. 46, 53, 716 P.2d 555 (1986). Typical discovery orders thus make steps toward final disposition of the merits of the case and can be effectively reviewed on appeal from a final judgment.

But the orders Brave appeals are not typical discovery orders. He appeals postjudgment motions about a protective order that was entered before summary judgment was granted and was enforced after the summary judgment decision was appealed. The district court's orders on those motions, made while Yudi's case is on appeal, cannot be effectively reviewed on appeal from the underlying judgment.

20

We find no precedent squarely on point. Yet we find other discovery issues arising outside the ordinary course of a lawsuit have been found to be "in effect" final orders, as they effectively dispose of the only issue before the trial court. For example, when the Kansas Commission on Civil Rights filed an action to force a retailer to comply with its subpoena in connection with its investigation of discrimination, the district court's order overruling the retailer's motion to quash and directing the retailer to produce the records was a "final decision" appealable as a matter of right. *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 309, 532 P.2d 1263 (1975).

> "The only issue before the trial court was whether Sears, through its credit manager, should be required to comply with the commission's subpoena. The district court ruled on that issue, and that issue alone. The court overruled Sears' motion to quash, and ordered Sears to comply therewith in substantial part. That ruling, as we see it, is in effect a final order—it effectively disposed of the only issue before the trial court." 216 Kan. at 309.

Similarly, our court has held that as to proceedings in aid of execution, the "final decision" for purposes of appeal is not the underlying judgment, but the later judgment that ends the proceedings:

> "This issue arises in the context of post-judgment proceedings instituted by Martin to facilitate the execution of her judgment against Phillips. In post-judgment litigation, such as this, the 'final decision' is not the underlying judgment that Martin is attempting to enforce but is actually the subsequent judgment that concludes the collection proceedings. See also *In re Joint Eastern & Southern Dist. Asbestos Lit.*, 22 F.3d 755, 760 (7th Cir. 1994) ('[A] postjudgment proceeding, for purposes of appeal, must be viewed as a separate lawsuit from the action which produced the underlying judgment. Consequently, the requirements of finality must be met without reference to that underlying judgment. . . . [A]s a general rule, an order authorizing discovery in aid of execution of judgment is not appealable until the end of the case.')." *Martin v. Philipps*, No. 111,985, 2016 WL 1169419, at *2 (Kan. App. 2016) (unpublished opinion).

21

Federal courts do the same for actions under 28 U.S.C. § 1782 (2018), which provide a way to obtain discovery without litigation on the merits. Under that statute, a party litigating a dispute in a foreign tribunal may request that a federal court direct a person or entity in this country to provide discovery, such as relevant documents or a deposition, for use in that proceeding. As a result, any orders issued in that context are separate from the merits of the litigation:

> "For that reason, we have effectively carved out an exception to the final judgment rule in this context to allow for appellate review. Like reviewable collateral orders, discovery orders in § 1782 actions do not take steps to resolve the litigation on the merits. Thus, the underlying orders are immediately appealable and do not merge with the final judgment on appeal." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 563-64 (7th Cir. 2018) (analogizing to the collateral order doctrine).

So too here, for purposes of appeal, we view the postjudgment litigation about the protective order as separate from Yudi's case that produced the underlying judgment. We thus determine whether the requirements of finality are met without reference to that underlying judgment. The district court has continuing authority to enforce its prior, validly issued order. We view its postjudgment decisions enforcing its protective order as final decisions from which appeals are appropriate.

C. *The Notice of Appeal Sufficiently Complies with Statutory Requirements.*

Brad argues that because the notices of appeal do not list Brave as a party appealing, the panel should dismiss his claims. We find that although the notices of appeal do not strictly comply with the statutory requirements, it is sufficient to provide jurisdiction to consider Brave's appeal of the sanctions entered against him.

22

Appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Wiechman*, 304 Kan. at 86-87. In civil cases, our statute requires a notice of appeal to include the name of the party appealing:

> "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." K.S.A. 2020 Supp. 60-2103(b).

See *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637-38, 270 P.3d 1074 (2011).

The notices of appeal list Yudi as the only party appealing, and the case caption lists Yudi as the only plaintiff. Brave was not a party to Yudi's lawsuit against Brad, and any arguments that he made about Brad's deposition transcript were made on Yudi's behalf. See *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ("a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients"). In fact, throughout litigation over the protective order in the district court, Brave maintained that he was never seeking access to Brad's deposition for his own purposes or on his own behalf.

But our Supreme Court has consistently interpreted K.S.A. 2020 Supp. 60-2103(b) liberally to ensure justice in all proceedings. *State v. Laurel*, 299 Kan. 668, 673, 325 P.3d 1154 (2014). It has "[o]bserv[ed] that a notice of appeal need not be overly technical or detailed" and has "generally considered whether the State has been prejudiced by a defendant's timely filed but otherwise faulty notice of appeal." 299 Kan. at 674. See *Hess v. St. Francis Regional Medical Center*, 254 Kan. 715, 718-20, 869 P.2d 598 (1994) (recognizing that a notice of appeal need not be too technical or detailed and should be broadly construed). Brad does not argue that he was prejudiced by the notice provided.

23

See *State v. Wilkins*, 269 Kan. 256, 269-70, 7 P.3d 252 (2000) (focusing on the State's failure to show prejudice in finding notice of appeal sufficient to confer jurisdiction).

Thus, under our Supreme Court precedent, an appellate court should avoid dismissing an appellant's case for lack of jurisdiction based on technical violations of notice of appeal filing requirements. Rather, we find that a notice of appeal confers jurisdiction to this court when the contents of the notice of appeal substantially comply with K.S.A. 2020 Supp. 60-2103(b) ("The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken."). See Supreme Court Rule 2.02 (2021 Kan. S. Ct. R. 14) (requiring notice of appeal to be filed in the district court, to be under the caption of the district court case, and to have substantially complied with the judicial council form); see also *Laurel*, 299 Kan. at 673-75. Those requirements are met here.

No doubt the better practice is for attorneys who wish to challenge sanctions orders against them to file a separate notice of appeal. But we should not dismiss an appeal under these circumstances for failure to name a party whose intent to appeal is otherwise clear from the notice. Here, the notices of appeal specifically purport to appeal orders that concern only the sanctions entered against Brave. And so the designation of the orders appealed provides sufficient evidence, by implication, of Brave's intent to appeal the order of sanctions.

Moreover, our appellate courts have reviewed similar sanctions appeals without questioning jurisdiction on this basis. See, e.g., *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015); *In re Marriage of Stockham*, 23 Kan. App. 2d 197, 203, 928 P.2d 104 (1996) (examining postjudgment sanctions in a divorce case); see also *Gant v. Birk*, No. 114,823, 2017 WL 3203567, at *12-13 (Kan. App. 2017) (unpublished opinion) (finding it unlikely that an attorney must intervene to appeal sanction rulings). And federal courts have done the same. See, e.g., *Commercial Bank v. Hundley*, 06-1038-

WEB, 2006 WL 1933763, at *2 (D. Kan. 2006) (unpublished opinion) (applying comparable rule regarding notice of appeal requirements and finding jurisdiction where appellant's attorneys' names were listed in the notice but were not specifically identified as parties taking the appeal). We thus find that the notice of appeal is sufficient to meet the requirements of K.S.A. 2020 Supp. 60-2103(b) as to the sanctions orders against Brave.

     D. *Yudi Lacks Standing to Appeal.*

We next address Brad's argument that Yudi lacks standing to appeal the district court's orders.

Parties in a judicial action must have standing as part of the Kansas case-or-controversy requirement imposed by the judicial power clause of Article 3, § 1 of the Kansas Constitution. See *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 895-96, 179 P.3d 366 (2008). Standing is a jurisdictional question which determines whether a litigant has a right to have a court determine the merits of the issues presented. See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903, 249 P.3d 434 (2011). Whether a party has established standing to bring an action before a Kansas court is a question of law over which review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

Our Supreme Court has "explained that if a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justiciable case or controversy' and the suit must be dismissed." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008) (quoting *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]).

"'Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of a controversy as to warrant the invocation of jurisdiction and justify exercise of the court's remedial powers on his or her behalf.'" *Stechschulte v. Jennings,* 297 Kan. 2, 29, 298 P.3d 1083 (2013) (quoting *Varney Business Services, Inc. v. Pottroff,* 275 Kan. 20, 30, 59 P.3d 1003 [2002]). To establish standing, a plaintiff must show that (1) he or she suffered a cognizable injury, and (2) there is a causal connection between the injury and the challenged conduct. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015). And "to establish a cognizable injury, a party must show 'a personal interest in a court's decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct.' *Sierra Club v. Moser*, 298 Kan. 22, 33, 310 P.3d 360 (2013)." *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015). A party who does not claim to have been prejudiced by a protective order or any ruling based on it lacks standing to appeal a postjudgment order enforcing the protective order.

*Yudi lacks standing to challenge the use of the deposition transcript.*

Brad argues that Yudi does not claim to have been prejudiced by the protective order or any subsequent ruling based on it. So neither she nor Brave can establish that Yudi needed Brad's deposition transcript to prosecute her case.

In affirming the grant of summary judgment, this court considered the elements necessary to establish Yudi's claims but found that Yudi failed to establish that she had relied on any alleged misrepresentation made in the AAPLO advertisements. *Hernandez*, 58 Kan. App. 2d at 505-08. The panel decided Yudi's claims without needing to examine any part of Brad's deposition. 58 Kan. App. 2d at 505-08, 512-14. The protective order's limitations on use of Brad's deposition thus had no impact on the panel's decision. Yudi does not argue that unlimited use of Brad's deposition transcript would have changed the outcome of her case, and the panel's analysis effectively forecloses any argument that it

26

would have done so. Thus, this case does not present a justiciable controversy as it relates to the use of Brad's deposition transcript. Yudi thus lacks standing to appeal the district court's orders about the use of Brad's deposition transcript.

*Yudi lacks standing to challenge the district court's failure to quash her subpoena.*

Yudi argues on appeal that the district court failed to timely quash the defendants' subpoena for her to appear at the June 19, 2019 hearing on Brad's third motion to enforce the protective order, so she was forced to appear and to answer the court's questions. (The court quashed the subpoena *after* it questioned Yudi, who was not under oath.) But having to appear at a hearing related to one's case and answer a judge's questions is not the kind of prejudice required for standing to sue a different party (here, Brad). Yudi thus fails to show that she suffered a cognizable injury as a result of the court's conduct.

*Yudi lacks standing to challenge the sanction orders against Brave.*

Similarly, Yudi lacks standing to appeal the district court's sanctions against Brave. Yudi's notices of appeal list the district court's May 22 and October 18, 2019 orders among the decisions she is appealing. Those orders include the sanctions for Brave by ordering him to pay $2,100 and $3,000 in fees, respectively, for unnecessarily causing Brad to move to enforce the protective order. But the court assessed fees against Brave, not Yudi. Yudi fails to show that the award of sanctions against Brave somehow harmed her. We thus lack jurisdiction to hear her challenges to the imposition of sanctions against Brave. Cf. *Mitchell v. Kraft Pizza Co*., 162 Fed. Appx. 801, 803 (10th Cir. 2006) (unpublished opinion) (finding a client lacked standing to appeal a sanction order against their attorney).

E.  *Brave Has Standing to Appeal Sanctions Against Him.*

Brave is the real party in interest. As the person aggrieved by the sanctions orders, he may appeal them. See *Weeks v. Independent School Dist. No. I-89*, 230 F.3d 1201, 1207 (10th Cir. 2000); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013).

Our court has found that counsel has standing to appeal sanctions orders that directly aggrieve them even if counsel did not move to intervene and was not named in the notice of appeal:

> "Here, the district court sanctioned McMaster for discovery violations related to the merits of the case**.** As the party aggrieved by the sanctions order, McMaster may appeal it. See *Weeks v. Independent School Dist. No. I-89 of Oklahoma, OK., Bd. of Educ.*, 230 F.3d 1201, 1207 (10th Cir. 2000) ('Counsel have standing to appeal orders that directly aggrieve them.'); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013) ('[A] party seeking to appeal must be aggrieved by the judgment or order from which the appeal is taken.'). Thus, while McMaster did not have a claim to the judgment, he still had a right to appeal the sanctions order, which arguably gave him a substantial interest in the case." *Gant*, 2017 WL 3203567, at *18.

We believe that case is well reasoned.

The Tenth Circuit considered a similar case and found jurisdiction to review a sanctions claim:

> "Turning to the sanctions, we address first whether Plaintiffs lack standing to appeal the sanctions. '[W]here sanctions have been imposed against counsel rather than a party, counsel are the proper parties to an appeal contesting those sanctions.' *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 n.3 (10th Cir. 1995). It is true, as Defendants point out, that Ms. Huffman does not list herself as a party in the Amended Notice of Appeal. It is

28

also true that Ms. Huffman states, explicitly, in the Amended Certificate of Interested Parties that she is not a 'direct part[y].' And '[t]here is no doubt but that the better practice is for an attorney who wishes to challenge a sanctions order directed at him or her to file a separate notice of appeal.' *In re Plaza-Martinez*, 747 F.3d 10, 12 (1st Cir. 2014) (citing 16A Charles A. Wright & Arthur R. Miller et al.,*Federal Practice and Procedure* § 3949.4 (4th ed. 2013)). But '[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice.' Fed. R. App. P. 3(c)(4); *see also Laurino v. Tate*, 220 F.3d 1213, 1218 (10th Cir. 2000). In *Laurino*, like here, the sanctioned attorney was nowhere mentioned in the notice of appeal. But, like here, '[t]he notice of appeal . . . specifically purports to appeal, among other things, from an order . . . that only concerns the sanctions entered against [the attorney].' *See Laurino*, 220 F.3d at 1218 (emphasis omitted). And so we held in *Laurino* that '[d]esignation of this order provides sufficient evidence, by implication, of [the attorney's] intention to take an appeal from the order of sanctions.' *Id.* Here it is clear from the notice of appeal that Ms. Huffman intended to appeal the sanctions order; thus, despite the errors in the notice of appeal and certificate of interested parties, we have jurisdiction over this part of the appeal." *Clemmons v. Wells Fargo Bank, N.A.*, 680 Fed. Appx. 754, 760 (10th Cir. 2017) (unpublished opinion).

We find this case persuasive. Brave has standing to appeal the sanctions orders that directly aggrieve him.

F. *Brave Lacks Standing to Appeal the District Court's NonSanction Postjudgment Discovery Orders.*

We next determine whether Brave has standing to appeal the district court's discovery orders other than the sanctions against him. These relate to Brave's use of Brad's deposition transcript in three cases, detailed below. Brave has appeared in this case as Yudi's lawyer and, therefore, has the legal capacity to act as her agent. But as such, he lacks authority or standing to act in this case for clients he represents in other cases who are strangers to this litigation or to act for himself as a litigant in another case. See *Chisler v. Randall*, 124 Kan. 278, 284, 259 P. 687 (1927) ("An attorney employed to

29

conduct litigation is agent for his client in matters respecting the litigation only."); *Miotk v. Rudy*, 4 Kan. App. 2d 296, 301, 605 P.2d 587 (1980) ("[A]n attorney, as agent for his client, is limited to control over procedural matters incident to [the] litigation.").

*Yudi's case*

The district court granted Brad summary judgment on both of Yudi's claims, and this court affirmed. The district court determined that because the case was on appeal "there [was] absolutely no reason to use any of the information and deposition transcripts from this case to further prosecute this case at the trial level." And on appeal, a panel of this court resolved the case without needing unlimited access to Brad's deposition transcript. *Hernandez*, 58 Kan. App. 2d at 505-08, 512-14. We issued the mandate in Yudi's appeal in December 2020, and no action we could take now about the protective order issues would affect Yudi's case.

We held above that Yudi lacks standing to appeal the court's orders about the use of Brad's deposition transcript because the panel's analysis effectively forecloses any argument that Brad's deposition transcript would have changed the outcome of her case.

Similarly, Brave lacks standing to appeal those orders. Brave is not a party to Yudi's case and has no personal interest in it, except as to the sanctions orders against him. He thus does not show that he has suffered a cognizable injury because of the court's rulings about the use of Brad's deposition transcript in Yudi's case. In other words, he fails to show a personal interest in the court's decision and that he personally suffered injury as a result of the challenged conduct, as is necessary for standing. *Solomon*, 303 Kan. at 521. Brave thus lacks standing to challenge the district court's limitation on use of Brad's deposition in Yudi's appeal of the district court's summary judgment decision.

*Lanham Act case*

In the federal Lanham Act case, Brave's law firm sued Brad and others, alleging false advertising regarding settlement recovery sums. Yudi was not a party to that case, but Brave was, and he tried to use Brad's deposition taken in Yudi's case in the Lanham Act case.

The district court in this case ruled that Brad had not waived the provisions of the protective order by listing his deposition transcript in his Rule 26 disclosures in the Lanham Act case. The district court later precluded Brave from simply filing Brad's deposition transcript in the Lanham Act case, but it allowed Brave to seek permission from the federal court to use Brad's sealed deposition transcript in the Lanham Act case, if the deposition remained subject to the protective order.

Brave does not explain how the district court's discovery rulings in this case prejudiced his Lanham Act case. So even if he suffered some cognizable injury in that case as a party, he fails to show "'a causal connection between the injury and the challenged conduct.'" *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 678. The district court in this case permitted Brave to seek permission from the federal court to use Brad's sealed deposition transcript in the Lanham Act case. The federal court's decisions about use of the deposition in that case were independent of those of the district court in this case, breaking any causal connection between the injury and the challenged conduct—the district court's postjudgment discovery rulings in this case.

We are not privy to any orders the federal judge may have made about the use of Brad's deposition transcript. But in February 2020, the federal district court of Kansas dismissed Brave's Lanham Act case with prejudice. See *Brave Law Firm, LLC*, 2020 WL 707847, at *7 (finding "'proof that the $9,000,000 and/or $9,500,000 settlement

advertised by [Brad] occurred as advertised'"). That ruling on the merits terminates the district court litigation.

Under comity principles, "courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." *Padron v. Lopez*, 289 Kan. 1089, 1108, 220 P.3d 345 (2009). We generally presume the validity of orders, journal entries, and judgments of the courts of another jurisdiction, and we place the burden of undermining the other jurisdiction's order on the party attacking it. *In re A.A.-F.*, 310 Kan. 125, 140, 444 P.3d 938 (2019). Likewise, we presume the validity of the federal judgment in the Lanham Act case, which Brave has shown no reason to disregard. The Lanham Act case has been validly dismissed. Because the Lanham Act case has been dismissed, no action we could take now about the use of Brad's deposition would affect that case.

And even if the district court's postappeal discovery rulings in this case somehow injured Brave as a party in the Lanham Act case, the proper forum to redress that injury is not in this separate appeal of Yudi's case, but in Brave's appeal, if any, in the Lanham Act case.

*Eby case*

We reach the same result as to *Eby*. In that case, Brave represented a client who sued Brad, alleging false advertising, making claims like those made in Yudi's case. Neither Yudi nor Brave was a party in *Eby*. Still, Brave tried to use in *Eby* Brad's deposition taken in Yudi's case. The district court in this case ruled that Brave could not use Brad's deposition transcript in *Eby* because Brave could depose Brad in *Eby*.

Brave lacks standing to appeal those orders in this case. Brave has no personal interest in *Eby*, where he is acting only as legal counsel. Although we do not know

whether *Eby* has been resolved, Brave does not argue how the district court's discovery rulings in this case caused any personal injury to him in *Eby*. In other words, he fails to show a personal interest in the court's decision and that he personally suffered injury as a result of the challenged conduct, as is necessary for standing. *Solomon*, 303 Kan. at 521. Brave thus lacks standing to complain about the use of Brad's deposition in *Eby*.

But even if the district court's postappeal discovery rulings in this case somehow prejudiced Brave's litigation in *Eby*, the proper forum to redress that injury is not in this appeal of Yudi's case, but in the parties' appeal, if any, of *Eby*.

### *An abstract right to a correct ruling is not enough.*

Brave generally complains that the district court erred *in this case* in its rulings about the use of Brad's deposition in *Eby* or the Lanham Act case. But even if we assume this is so, the abstract right to a correct ruling by the district court in this case is not substantial enough to warrant appellate review. As the Kansas Supreme Court held in *State v. Roat*, 311 Kan. 581, 598-99, 466 P.3d 439 (2020), an abstract right to a correct ruling is insufficient to warrant appellate review:

> "Roat also stated, at oral argument, that he has an abstract 'right to a correct sentence.' This is an insufficiently substantial right to warrant further appellate review. The duty of the courts is to decide actual controversies by a judgment that can be given an effect and not to give opinions on abstract propositions. *Burnett v. Doyen*, 220 Kan. 400, 403, 552 P.2d 928 (1976). Having an abstract interest in the outcome of litigation does not prevent an issue from becoming moot. *Andeel v. Woods*, 174 Kan. 556, 558, 258 P.2d 285 (1953); *Moore*, 160 Kan. at 170.
> "Mere stigma or 'rightness' is insufficient to justify continuing to exercise jurisdiction over an appeal."

33

In the same way, Brave has failed to show anything more than an abstract right to a correct ruling. He shows us no actual controversy we could decide as to the use of Brad's deposition by a judgment that can be given any effect. The effective means to vindicate injuries suffered to one's rights is by appealing any adverse ruling in the case in which the ruling injured the parties, not in Yudi's case, where it showed no prejudice.

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ASSESSING FEES AGAINST BRAVE.

The sole issue we address on the merits is whether the district court abused its discretion by sanctioning Brave for his conduct in the amounts of $2,100 and $3,000. Brave contends that the district court lacked statutory authority to enter these sanctions and that they were generally unreasonable.

Whether a district court has the authority to impose sanctions presents a question of law. *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009). To the extent that this issue requires statutory interpretation, it presents a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). But the decision to sanction within recognized authority and the amount of a particular sanction are matters of judicial discretion and will be reversed on appeal only for an abuse of that discretion. See *Unruh*, 289 Kan. at 1200; *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, 625, 240 P.3d 969 (2010). A court abuses its discretion regarding an award of discovery sanctions when it reaches a decision with which no reasonable person could agree, but if any reasonable person could agree, the decision must be affirmed. *Canaan v. Bartee*, 276 Kan. 116, 135, 72 P.3d 911 (2003).

A. *The District Court Had Statutory Authority to Award Sanctions.*

K.S.A. 2020 Supp. 60-226(c) provides the district court the authority to grant a protective order in some cases. If confidential or privileged documents are ordered to be produced, the district court has a duty to limit the availability and use of those documents by using protective provisions. *Berst v. Chipman*, 232 Kan. 180, 186-87, 653 P.2d 107 (1982); see *Svaty*, 291 Kan. at 622-23. K.S.A. 2020 Supp. 60-226(c)(3) references K.S.A. 2020 Supp. 60-237 for the procedure the court should follow when awarding expenses.

K.S.A. 2020 Supp. 60-237(a) prescribes several rules for a "[m]otion for an order compelling disclosure or discovery." K.S.A. 2020 Supp. 60-237(a)(5) refers to protective orders and provides that the district court *must* award expenses to a moving party if the district court conducts a hearing, allows the party accused of necessitating the motion to be heard, and grants the motion. See *Adamson v. Drill Baby Drill, LLC*, No. 115,762, 2018 WL 560890, at *14-15 (Kan. App. 2018) (unpublished opinion); see also *Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, No. 09 CIV 10392, 2010 WL 5158183, at *3 (S.D.N.Y. 2010) (unpublished opinion) ("'[T]he court has discretion under Rules 26[c] and 37[a][5] to require the losing party on a motion for a protective order to pay the expenses incurred in relation to the motion.'").

Brave argues that K.S.A. 2020 Supp. 60-237(a) does not apply to a motion to enforce a protective order because it specifically references only a motion to compel. But K.S.A. 2020 Supp. 60-226(c) directs the court to award expenses as provided in K.S.A. 2020 Supp. 60-237. And K.S.A. 2020 Supp. 60-237(a)(5) prescribes the payments of expenses for "protective" orders, citing K.S.A. 2020 Supp. 60-226(c). Because the statutes refer to one another, it would be unreasonable to find they are unrelated. We must construe statutes to avoid unreasonable results. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). We thus find that K.S.A. 2020 Supp. 60-237(a) applies to a motion to enforce a protective order. The district court had authority under this statute to

35

require the losing party to pay the expenses incurred in relation to the motion to enforce a protective order. The court did so here.

B. *Brad Succeeded on His Second Motion.*

Brave next contends that the record does not show that Brad succeeded on his second motion to enforce the protective order, so the court could not have sanctioned Brave under K.S.A. 2020 Supp. 60-237. We disagree.

After litigating the issue about Brad's deposition transcript, Brave filed a "Notice of Compliance" with the protective order in May 2019. By that time, Brave had filed Yudi's appellate brief, and the district court had decided that only limited portions of the transcript could be added to the record on appeal. In the notice, Brave claimed that he had complied with the protective order and could thus use Brad's deposition transcript "for any reason, in any manner." Brave explained that because Brad's attorney had disclosed the transcript as a part of his Rule 26 discovery requirements in the Lanham Act case, where Brad had seven days to object yet did not object, Brave could freely use the deposition. This prompted Brad to move a second time to enforce the protective order.

The district court, after a hearing, granted Brad's motion finding Brad had not waived the mandates of the protective order. The court reminded the parties that Brad's deposition could not be used except in Yudi's case. Recognizing Brave's admission that he had already improperly disclosed information from the transcript in violation of the order, the court ordered Brave to disclose the identities of those individuals. But Brave refused.

The court ordered Brave to pay Brad's costs for prosecuting his motion to enforce the protective order. According to the calculation provided by Brad's attorney at the

hearing, Brave owed $2,100 for 7 hours of work at $300 per hour. Brave does not claim the hourly rate or total award is unreasonable in amount.

After reviewing the record, we agree that the district court's finding that Brad had not waived the mandates of the protective order was a win for Brad. Brave wanted unlimited use of Brad's deposition transcript, yet the district court denied that request. The court thus had the authority to sanction Brave, as the attorney whose conduct necessitated the motion, under K.S.A. 2020 Supp. 60-237(a)(5). Having reviewed the facts of record, we find the court's sanction was reasonable, not an abuse of discretion.

C. *Brad Partially Succeeded on His Fourth Motion.*

Brad's fourth motion to enforce the protective order sought relief from the district court through its protective power over discovery afforded by K.S.A. 2020 Supp. 60-226(c). Brad sought to address Brave's violation of the district court's previous orders. The district court gave Brave a chance to respond before granting Brad's motion in part and denying it in part. By allowing Brave to seek permission from the federal court to use Brad's sealed deposition transcript in the Lanham Act case, Brad lost in part. But by precluding Brave from simply filing Brad's deposition transcript in the Lanham Act case, as Brave had threatened to do, Brad won in part.

Based on Brad's representation of costs at the motion hearing, the court awarded Brad attorney fees of $3,000 for costs associated with prosecuting his partially successful motion. Brave does not claim the hourly rate or total award is unreasonable in amount.

The district court explained that it based its assessment on Brave's extensive and unnecessary litigation over the use of Brad's deposition transcript. Although K.S.A. 2020 Supp. 60-237(a)(5)(C) provided the court with the authority to "apportion the reasonable expenses for the motion," Brave does not argue that he should have been assessed only

some of the costs and he fails to establish that the entire cost could not properly be assessed under this provision. We find the sanction to be reasonable and not an abuse of discretion.

District courts are better positioned than we are to evaluate the conduct and good faith of parties during discovery, and as such they enjoy considerable leeway in sanctioning discovery abuses.

> "We view challenges to a district court's discovery sanctions order with a gimlet eye. We have said that district courts enjoy 'very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011).

We echo that sentiment here, equally applicable to the sound management of postjudgment litigation to enforce protective orders.

Affirmed in part and dismissed in part.