No. 127,343

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD A. GOULD,
*Appellant*,

v.

PATRICIA D. CRAWLEY, M.D.,
*Defendant*,
and
MICHAEL F. LLOYD, D.O., and
NEWMAN MEMORIAL COUNTY HOSPITAL d/b/a
NEWMAN REGIONAL HEALTH,
*Appellees*.

SYLLABUS BY THE COURT

1.

A sanctioned attorney, as the real party in interest, may have standing to appeal a sanctions order even though the sanctioned lawyer did not move to intervene and was not named in the notice of appeal.

2.

A district court retains ancillary jurisdiction to consider collateral matters, including an award of attorney fees, after the parties settle the case and the court dismisses it with prejudice.

3.

Settlement of the underlying claim presumably also settles attorney fees, unless the settlement agreement specifically states that a party may seek an award of attorney fees.

1

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Oral argument held April 8, 2025. Opinion filed July 11, 2025. Affirmed.

*Thomas M. Warner Jr.* and *Anne H. Pankratz*, of Warner Law Offices, P.A., of Wichita, for appellant.

*Mark R. Maloney*, of Hinkle Law Firm LLC, of Wichita, for appellee Michael F. Lloyd, D.O.

*Lawrence J. Logback* and *Brenna M. Lynch*, of Simpson, Logback, Lynch, Norris, P.A., of Overland Park, for appellee Newman Memorial County Hospital d/b/a Newman Regional Health.

Before CLINE, P.J., ARNOLD-BURGER and GARDNER, JJ.

GARDNER, J.: After undergoing a procedure at Newman Memorial County Hospital (d/b/a Newman Regional Health; hereinafter "NRH"), Richard Gould brought a medical malpractice claim against NRH, Dr. Michael Lloyd, and Dr. Patricia Crawley (who is not involved in this appeal). After Gould settled his case, his attorneys moved for attorney fees and costs associated with discovery disputes unresolved before the case settled. The Lyon County District Court denied Gould's counsel's motion for attorney fees and costs, finding that any further action or claim was barred by the Settlement Agreement and that the subsequent dismissal of the case with prejudice divested the court of jurisdiction to award fees. Gould's counsel then unsuccessfully moved to alter or amend the district court's denial of their attorney fees incurred presettlement. Gould's counsel appeal.

NRH and Lloyd argue that this court cannot reach the merits of this appeal because Gould and his attorneys lack standing and this court lacks jurisdiction over this appeal. Alternatively, they argue the district court properly denied Gould's counsel's request for attorney fees and costs because they are encompassed within the Settlement

2

Agreement. After careful review, we find we have jurisdiction, and we affirm the district court's denial of Gould's counsel's motion for fees and costs.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Dr. Crawley performed a heart catheterization procedure on Gould at NRH in Emporia. Crawley, an employee of NRH, was assisted by other non-physician employees of NRH. At the time of Gould's procedure, Dr. Lloyd, also an employee of NRH, was serving as the co-medical director of the cardiovascular lab at NRH. Although Lloyd did not participate in Gould's procedure and did not otherwise have a doctor-patient relationship with Gould, discovery showed that 11 text messages were exchanged during Gould's procedure between Lloyd and Dave Brown (a nursing director at NRH).

NRH retained Thomas Conley, a radiation physicist, to analyze Gould's radiation dose in 2017. In February 2018, Gould's counsel mailed a "Notice to Preserve Evidence" to the Chief Executive Officer of NRH, the Lyon County Clerk, and NRH's and Crawley's counsel directing NRH and its employees to preserve all electronically stored information, including digital communications, related to Gould's radiation exposure.

In May 2019, Gould filed a medical malpractice case against NRH, Crawley, and Lloyd, claiming he had received an excessive amount of radiation during his May 2017 procedure. But many facts related to that case are not important to this appeal because that case settled pretrial after five years of discovery.

Our focus is on two discovery disputes that gave rise to the motion for fees and costs—the first regarding Lloyd's text messages, which we refer to as "The Lloyd Saga," and the second regarding one of NRH's experts, Conley, which the district court referred to as "The Conley Affair."

3

*Discovery Dispute Over Lloyd's Text Messages: "The Lloyd Saga"*

At the time of Gould's procedure, Brown was designated a "circulator" in the room where Gould's heart procedure occurred. Before Gould filed his lawsuit, Brown (an acquaintance of Gould) contacted Gould and told him if he needed help with his case to give him a call. During that call he also mentioned that Gould should tell his attorney to get the cell phone records of the people in the room during the procedure.

*Initial Discovery Requests*

In May 2019, Gould served written discovery requests on Lloyd asking him to produce "[a]ll phone records, cellular phone statements, pager statements, bills and any other documentation of all phone calls and pages made to or from Defendant Dr. Lloyd's office, cell and residential phones for May 23, May 24, May 25, May 31 and June 5, 2017." Lloyd objected to this request as irrelevant and disproportional to the needs of the case. He also asserted he "did not provide any care and treatment to [Gould], so his phone records are not at issue."

Gould also requested "[a]ll documentation concerning any telephone communication or email communication between you and any other physician or health care provider concerning Richard Gould." Lloyd objected to this request "insofar as it requests the production of documents protected by the peer review or risk management privileges." Still, Lloyd responded he was unaware of any responsive documents other than those contained in the medical records.

Lloyd later agreed to produce his cell phone records for the date of Gould's procedure without a court order. The court later ordered Lloyd to produce the other days of cell phone records that Gould sought, and Lloyd did so. Lloyd's phone bills reflected

4

that 11 text messages had been exchanged between Lloyd and Brown during Gould's procedure but did not reflect their content.

*Gould's Further Inquiries*

In June 2021, unbeknownst to Gould, Lloyd's counsel retained a forensic IT expert, John Mallery, to extract texts (deleted or otherwise) from Lloyd's cell phone dating back to May 2017. Mallery performed a data extraction on the phone on July 2, 2021, using Cellebrite software, but he was unable to retrieve any text messages before May 2018.

Gould's counsel later began informally requesting access to Lloyd's cell phone so Gould's IT expert could retrieve the content of the 11 text messages sent on May 25, 2017, between Lloyd and Brown. Lloyd responded he no longer had the texts, which were then more than four years old.

A few weeks later, in July 2021, under the impression that his cell phone data had been downloaded and preserved by Mallery, Lloyd traded in his cell phone.

*Lloyd's Deposition*

In August 2021, Gould formally requested Lloyd's cell phone for the first time in the notice for Lloyd's deposition. Lloyd objected, asserting that the request was irrelevant and disproportional to the needs of the case.

Lloyd was deposed in mid-August 2021, during which he testified he did not recall any communications with Brown during Gould's procedure. Lloyd recalled that Brown had told him about an issue shortly after the procedure concluded, not during it. Lloyd

5

did not bring his old cell phone to the deposition as formally requested because he had already traded it in for a new device.

*Gould's Motion to Compel Production*

In February 2022, Gould moved to compel production of Lloyd's cell phone and its data under K.S.A. 2021 Supp. 60-237(a). Lloyd responded that before August 3, 2021, Gould had not served any discovery asking to inspect Lloyd's cell phone nor had he provided any specificity about the scope and parameters of any informally requested inspection. Lloyd argued that informal email requests do not require a response under Kansas law and do not support a basis for a motion to compel. Lloyd also explained that before he upgraded his phone and traded in his old device, Mallery had run a data extraction and determined the phone did not contain any texts dating back to May 2017.

Lloyd also argued these cell phone issues did not give rise to a spoliation of evidence claim. Lloyd's phone records show that he and Brown communicated by text frequently, but Lloyd argued that only speculation supported a finding that his texts on the day of the procedure related to Gould. For example, Lloyd said there was a meeting scheduled that day involving "echo issues" that he, Crawley, and Brown were to attend. Yet during his deposition, Brown testified that he did not recall texting Lloyd on the day of the procedure but said that he would have no reason to have texted Lloyd that day other than Gould's procedure. Brown testified that he believed all these text messages concerned Gould's excess radiation.

At the April 2022 hearing on the motion to compel production of Lloyd's cell phone, the district court ruled that discovery would stay open to allow Mallery to be deposed.

6

*The district court grants Lloyd summary judgment.*

Independent of the discovery dispute issue, Lloyd had moved for summary judgment in March 2022, claiming he had no fault under Kansas' vicarious liability statute (K.S.A. 40-3403[h]). In May 2022, the district court granted Lloyd's motion for summary judgment, finding Lloyd had not participated in Gould's medical procedure and had no physician-patient relationship with him. The district court held that because of this lack of participation and relationship, any potential claim for negligence against Lloyd derived from and depended on the treatment rendered by Crawley and other NRH employees. Accordingly, the district court found Lloyd was "entitled to the protection against liability afforded by K.S.A. 40-3403(h)." The district court dismissed Lloyd from the case, leaving Crawley and NRH as defendants.

*The district court orders Lloyd to pay fees as a sanction then reconsiders and stays that order.*

Two days after Lloyd was dismissed, Mallery, Lloyd's IT expert, was deposed. During that deposition, Mallery testified to three reasons why text messages from the day of Gould's procedure would no longer be on Lloyd's cell phone: (1) the texts were intentionally deleted; (2) the texts were unintentionally deleted; or (3) the retention time for text messages on Lloyd's iCloud account was changed from the "forever" setting. Mallery opined that an iCloud calendar entry on Lloyd's cell phone dated May 25, 2017, led him to conclude that someone deleted Lloyd's text messages from his cell phone for May 25, 2017. Mallery testified that it was possible, however, that the missing texts could be retrieved from Lloyd's iCloud account.

In December 2022, the district court held a hearing on the discovery dispute over Lloyd's cell phone. The district court ordered that Gould's electronic information expert, Paul Saas, be granted limited access to Lloyd's iCloud account to search for the text

messages between Lloyd, Brown, and Crawley from May 25 to June 8, 2017. The district court took Gould's motion for costs related to this discovery issue under advisement and directed Gould's counsel to submit a written motion. Gould did so.

In February 2023, the district court ordered Lloyd to pay, as a sanction, the following costs related to the discovery issues surrounding Lloyd's cell phone: (1) the costs incurred in deposing Mallery, in the amount of $1,636.86; (2) the costs associated with Saas' search of Lloyd's iCloud account and deposition, for which no specific amount was ordered; and (3) Gould's attorney fees in the amount of $5,000, which equates to $62.11 per hour.

Lloyd moved the district court to reconsider its rulings on the discovery dispute over Lloyd's cell phone. At the evidentiary hearing on this motion, Lloyd testified that he did not believe the text messages between Brown and himself on May 25, 2017, were related to Gould's procedure, but he could not recall with absolute certainty. Lloyd recalled that the first time he heard about the procedure he had learned a fact that could not have been known until the procedure ended. This was consistent with Brown's recollection—he said he was present at the beginning of the procedure, checked back in about an hour into the procedure and everything was fine, and then did not return until the end of the procedure, when he learned there was an issue and called Lloyd. Mallery testified that he could not locate any text messages from 2017 on Lloyd's phone extraction or through his iCloud data.

At the close of the hearing, the district court explained that he was having difficulty seeing the importance of the text messages to Gould's overall case or finding any prejudice to Gould even if the text messages could not be recovered. Gould's counsel responded that the purpose of getting the text messages was to try to bring Lloyd back into the case after his dismissal. The district court characterized that desire as "a stretch," given the evidence.

Instead, the district court granted Lloyd's motion to reconsider and stayed its earlier order granting Gould fees and costs, stating its prior order had been "entered prematurely without allowing Dr. Lloyd to be heard pursuant to K.S.A. 60-327."

The district court said that it would allow the parties to determine whether the texts could be restored or replaced through additional discovery (by working with Saas) before it proceeded under K.S.A. 2022 Supp. 60-237(e) (which provides for sanctions when a party is prejudiced by another party's failure to preserve electronically stored information). The district court clarified it would review the results of Saas' investigation into what could be retrieved from the iCloud "before ruling on the payment of costs and before considering the claim of prejudice to [Gould] resulting from the loss of this information." The district court also stated it would "consider, among other things, the fairness of requiring reimbursement of costs in light of Mr. Saas' testimony there is a slim chance his efforts will be successful and in light of the evidence provided to the Court by [Lloyd's counsel] related to Mr. Brown's location during [Gould's] procedure." Its written order thus stayed its prior sanction of attorney fees and costs related to the Lloyd texts.

*The parties settle without a related fee order.*

In accordance with the district court's order, Lloyd's counsel provided Gould's counsel and Saas access to all the information required by the district court's order; Lloyd provided his then current cell phone to Saas, who ran a data extraction program on it. At the conclusion of the data extraction on Lloyd's new phone, Saas returned to his office to perform the iCloud search. But because of a software error on Saas' end, he was not able to access Lloyd's iCloud account to determine whether it preserved the content of any texts.

Saas was also given a copy of Mallery's Cellebrite extraction from the cell phone Lloyd had at the time of Gould's procedure. But before Saas could complete his

9

investigation and before the district court made any other orders on the discovery dispute about Lloyd's text messages, the parties executed the Settlement Agreement.

*Discovery Dispute over NRH's Expert: "The Conley Affair"*

The second discovery dispute that occurred before settlement relates to NRH's expert witness, Conley. After Gould sued, NRH designated several experts, including Conley and Dr. Kenon Qamar. Conley's initial report, dated in December 2017, listed a radiation dose received by Gould that was much lower than that calculated by Gould's radiation physicist expert, Dr. Aaron Jones. In response, Conley submitted a second report which changed some of his calculations. Qamar then relied on Conley's calculations in forming his opinion that Gould had an extremely low risk of developing heart disease or cancer due to the amount of radiation he had received during the procedure.

> *NRH withdraws and then re-designates Conley as an expert witness; the district court orders NRH to pay fees but not as a sanction.*

Gould received Conley's reports in February 2022, but NRH did not provide deposition dates for Conley, contrary to the district court's scheduling order. On March 14, 2022, Gould requested a date to depose Conley. NRH responded that it intended to withdraw Conley as an expert witness. Gould's counsel then informed NRH's counsel that they would object to Qamar's relying on any calculations from Conley when giving his opinions at trial.

After the deadline passed to list experts and provide deposition dates for them, NRH told Gould that it would not withdraw Conley as an expert witness unless the parties agreed that Qamar could rely on Conley's report when testifying at trial. Gould's counsel told NRH she could not agree to those terms because she believed that other

10

experts could not rely on a non-testifying expert's report, as that would be hearsay. NRH then redesignated Conley as an expert in case he was needed to lay a foundation for Qamar's trial testimony, and Gould moved to strike this redesignation.

The district court held a motions hearing in November 2022, which included Gould's motion to strike. The district court allowed Conley to be redesignated as an expert because trial was still 10 months away. NRH's counsel stated at this hearing that "Conley has been undergoing cancer treatment and that had something to do with the re-designation. If I didn't need to put him through a deposition, I was not going to."

The district court then ordered NRH to pay the costs of Conley's deposition and the redeposition of the experts relying on his reports. It also ordered NRH to pay for the review, additional report, and redeposition of Jones, NRH's expert. The district court also ordered Conley's deposition to occur within 45 days, at NRH's expense.

On the morning scheduled for Conley's deposition, NRH's counsel called Gould's counsel and related that Conley had said he was "not going to be able to do this." The district court held an emergency hearing on Conley's inability to be deposed. NRH then stated that Conley had withdrawn from all cancer treatment except pain medications, and that counsel did not think it necessary or desirable to put him through a deposition. Because of Conley's physical condition, NRH asked to name a substitute expert. The district court then ordered briefing on the issues of designating a substitute expert for Conley and whether an expert can rely upon hearsay evidence at trial. Yet before those briefs were filed, Conley died.

*The district court orders NRH to pay fees for a substitute expert, but not as a sanction.*

After the parties submitted those briefs, Gould moved the court to strike Conley's opinions, deny NRH a substitute expert, and impose sanctions on NRH for discovery abuse. After review, the district court declined Gould's motion to sanction NRH for the Conley events, finding them unplanned and unexpected rather than a strategic ploy. But the district court granted NRH's motion to substitute another expert for Conley and ordered NRH to pay Gould's attorney fees and costs related to the substitution, including:

> "[A]ll costs and fees incurred in the preparation and deposition of the substituted expert and all supplemental depositions of defense experts and plaintiff's experts and/or rebuttal experts made necessary as a result of the substitution of experts."

But Gould's counsel did not move for those fees or itemize their attorney fees or costs for those depositions, which were then ongoing, until after the parties signed the Settlement Agreement.

*The parties agree to settle the case.*

In June 2024, a mediator assisted in settlement negotiations between Gould, NRH, and Crawley. In an email to NRH and Crawley, the mediator set out Gould's eight detailed terms, in addition to Gould's settlement demand in dollars. Nowhere in the settlement demand did Gould request attorney fees and costs. Gould's counsel later told the district court there had been no discussion during mediation about attorney fees or costs. The mediator asked the parties to tell him if there was "ANY disagreement with the detail outlined" in the email. One week later, NRH and Crawley accepted Gould's settlement demand, and Gould's counsel advised him the demand had been accepted.

12

*Gould's counsel moves for fees and costs for both discovery disputes.*

In July 2023, before signing the Settlement Agreement, Gould's counsel moved for attorney fees and costs totaling $353,037.38. $145,156.06 of that total was attributable to "The Lloyd Saga" and the remaining $207,881.32 was attributable to "The Conley Affair."

Lloyd opposed the motion, arguing "with the resolution of this case, it is unclear why [Gould] continues to seek access to Dr. Lloyd's iCloud other than to harass Dr. Lloyd." Lloyd asserted:

- no order for him to pay attorney fees was issued because the prior order had been stayed;
- any claim for attorney fees and costs related to his cell phone had been resolved in the Settlement Agreement with NRH;
- the request for $145,156.06 was unreasonable and violated Kansas Rule of Professional Conduct 1.5(a) (2025 Kan. S. Ct. R. at 326); and
- if the district court were to consider ordering Lloyd to pay attorney fees and costs, he wanted an opportunity to complete discovery and have a hearing on the issue of whether fees were appropriate and, if so, what fee award was reasonable under the circumstances.

NRH also responded to this motion, challenging the amount of attorney fees and costs requested as to the Conley matter. It argued:

- the fees sought (over $207,000) were excessive because the district court found NRH's acts related to the substitution for Conley were *not* sanctionable conduct, yet the amount sought could be viewed only as a sanction or punishment;

13

- counsel's itemization did not reflect meticulous, contemporaneous time records; and
- the hourly rate sought—$500—was unreasonable, noting that the amount billed by defense counsel for NRH for this issue was less than $30,000.

NRH asked the district court to deny the fee motion and to make a reasonable determination of any fees and costs owed.

*The parties sign the Settlement Agreement knowing the fee dispute was unresolved.*

In August 2023, the Settlement Agreement was signed. As the district court later found, "[i]t is clear there was no meeting of the minds related to whether the Settlement Agreement encompassed counsel's claim for attorney fees." The district court found that each party had chosen not to address the issue of attorney fees in the Settlement Agreement:

> "The Court has no doubt when the Settlement Agreement was signed on August 7, 2023, each side knew the other's position regarding the claimed attorney fees. Plaintiff's counsel knew NRH believed the Settlement Agreement included all claims for attorney fees including those related to Dr. Lloyd's cell phone and Mr. Conley. Likewise, NRH was aware Plaintiff's counsel believed the Settlement Agreement did not include attorney fees related to Dr. Lloyd's cell phone and Mr. Conley."

The parties do not challenge that conclusion on appeal. And it is supported by the fact that Gould's motion for attorney fees and costs, and defense counsel's opposition to it, were pending when the parties signed the Settlement Agreement.

The parties also agreed that the action would be dismissed with prejudice when the district court approved the settlement.

*The district court approves the Settlement Agreement but denies attorney fees.*

One day after signing the Settlement Agreement, the district court held a hearing at which Gould, his attorneys, and counsel for NRH and Crawley appeared. All asked the district court to approve the Settlement Agreement. The district court asked Gould if he approved the Settlement Agreement and if he accepted the terms of his written fee agreement with his counsel. Gould stated he approved these agreements and requested the court's approval of the Settlement Agreement, plaintiff's expenses, and plaintiff's attorney fee agreement. The district court approved the Settlement Agreement as well as the terms of Gould's contract with his attorneys for their payment, but the record does not include a copy of that contingent fee agreement.

The discussion of Gould's counsel's motion for fees began after Gould was excused from the hearing. His attorney argued that because nothing in the Settlement Agreement excluded attorney fees, they could be recovered. NRH and Crawley's attorneys countered that because Gould had not excluded the outstanding discovery issues or fees for them from Gould's release of "all claims . . . direct or indirect," then the fees and costs were included in the agreement's release, and, therefore, had been settled.

Gould's counsel stressed to the district court that the dispute over attorney fees could not be used to void the Settlement Agreement because "we can't compromise our client's best interest for the lawyer's interest." The attorney fees issue is a material issue unresolved in the Settlement Agreement. Still, the parties agree on appeal that the Settlement Agreement is valid, no party seeks to rescind or nullify that agreement, and no one argues that the lack of meeting of the minds affects any issue on appeal. Compare *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 284, 286 P.3d 542 (2012) (finding no enforceable contract when the board failed to prove a meeting of the minds on all essential elements of the negotiated terms).

As the discussion progressed, the district court explained that if it approved the Settlement Agreement, it would dismiss the matter under Paragraph 8, and if the matter were dismissed, the court would lack jurisdiction to consider Gould's counsel's claim for attorney fees. Despite that caution, Gould's counsel reiterated that Gould was "unequivocally" asking the district court to approve the Settlement Agreement, which required dismissal of the action with prejudice.

Ultimately, the district court held the Settlement Agreement included in its release attorney fees and costs related to the Lloyd and Conley discovery disputes. The district court then accepted the agreement and dismissed the action with prejudice.

*The district court denies Gould's counsel's motion to alter and amend.*

Gould's counsel timely moved to alter or amend the judgment, asking the district court to find that the Settlement Agreement did not include Gould's attorney fees requests related to the Lloyd and Conley discovery disputes. Gould's counsel made it clear that Gould did not want to void the Settlement Agreement. But the district court denied counsel's Motion to Alter or Amend. Gould's counsel had argued that attorney fees had been awarded under K.S.A. 2022 Supp. 60-237, as a sanction for violating discovery orders, so were separate from the claims discharged under the Settlement Agreement. Yet the district court rejected the premise that it had previously awarded attorney fees and costs under K.S.A. 2022 Supp. 60-237 for either discovery dispute.

With respect to Lloyd, the district court held "[a]t the time the [settlement] agreement was approved by the Court, there were no orders in place for the costs incurred by [Gould] related to Dr. Lloyd's cell phone." The district court also wrote "[i]t is not correct to say the Court has awarded attorney fees related to the attempts to secure data from Dr. Lloyd's cell phone." The district court underscored that Gould's counsel had

16

merely a potential claim for sanctions under K.S.A. 2022 Supp. 60-237 when the case settled.

With respect to Conley, the district court stated "the Court indeed ordered NRH to pay attorney fees and costs incurred" because of Conley's designation, withdrawal, death, and substitution. The district court continued "[i]n so doing, the Court found the substitution of an expert for Mr. Conley was not the result of any orchestrated effort on the part [of] NRH's attorney." The district court confirmed that it "did not order the payment of the attorney fees or costs as a sanction under K.S.A. 60-237."

The district court stated Gould's "claims in this case were not resolved with a decision on the merits. They were resolved when the parties entered into a Settlement Agreement thereby avoiding a judgment of the merits." Accordingly, it framed the issue as whether "any of the terms within the Settlement Agreement prevent the Court from entertaining counsel for [Gould's] claim for additional attorney fees related to Dr. Lloyd's cell phone and Mr. Conley." The court answered that question affirmatively, rejecting Gould's counsel's argument that attorney fees and costs were not part of Gould's claims because he had released only claims arising from his treatment on May 25, 2017. It found that the release was broader and included the attorney fees Gould's counsel sought.

In reading section eight, the district court also found that the terms of the Settlement Agreement required dismissal of the "Action," and the dismissal divested the court of jurisdiction to award attorney fees.

> "Counsel for the plaintiff now argues that even though the 'Action' has been dismissed as required by the Settlement Agreement, the Court can still order attorney fees. On this point, the Court disagrees. Counsel for the plaintiff relies on many cases that state the issue of attorney fees is separate from a resolution of the merits either through court or jury verdict or perhaps upon summary judgment. This may be true when the claimed fees

17

are authorized by statute or contract and when there is a resolution on the merits through a court or jury verdict or through summary judgment. However, this case was not resolved on its merits. It was resolved through compromise and settlement.

"There can be no dispute, the terms of the Settlement Agreement require dismissal of the 'Action'."

Because the district court held that the terms of the Settlement Agreement required dismissal of the action, the court found it unnecessary to address NRH's argument that Gould had acquiesced in the judgment by accepting the money paid to him in consideration for his acceptance of the Settlement Agreement.

Gould timely appeals.

ANALYSIS

Gould's appeal raises four substantive arguments: (1) the district court erred by holding it no longer had jurisdiction to assess attorney fees; (2) the district court erred by ruling that "claims" and "costs" are the same thing; (3) the district court abused its discretion by determining a low hourly rate for attorney fees; and (4) this panel should determine the amount of attorney fees and costs rather than remand to the district court.

But before we reach these issues, we must address the procedural matters defendants raise, challenging our jurisdiction. NRH and Lloyd counter that this court lacks jurisdiction over this appeal for three reasons: (1) Gould's attorneys lack standing to make a claim; (2) Gould's attorneys did not move to intervene as non-parties; and (3) Gould acquiesced to the judgment by accepting the agreed-upon settlement payment. Lloyd adds that this court lacks jurisdiction because any pending pretrial discovery issues became moot when the case settled.

18

## I.  THIS COURT HAS JURISDICTION OVER THIS APPEAL.

We first address NRH and Lloyd's nearly identical arguments questioning this court's jurisdiction over this case.

*Standard of Review and Legal Maxims*

We address two intertwined yet distinct concepts of subject matter jurisdiction and justiciability. Subject matter jurisdiction is "the power of the court to hear and decide a particular type of action." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). And the term "justiciable" means a case is properly suited for resolution by a court. See *Rucho v. Common Clause*, 588 U.S. 684, 691, 139 S. Ct. 2484, 204 L. Ed. 2d 931 (2019); Black's Law Dictionary 1034 (12th ed. 2024) (defining "justiciable" as "subject to proper resolution on the merits by a court of justice; capable of being disposed of judicially").

Both subject matter jurisdiction and justiciability are questions of law, subject to unlimited appellate review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022) (appellate jurisdiction); *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 666, 359 P.3d 33 (2015) (justiciability). Issues of subject matter jurisdiction and justiciability can be raised at any time, even sua sponte. *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 666.

Article 3, § 1 of the Kansas Constitution grants the "judicial power" of the state to the courts. The "judicial power" granted to the courts is the "power to hear, consider and determine controversies between rival litigants." *State v. Mohler*, 98 Kan. 465, 471, 158 P. 408 (1916), *aff'd sub nom. Payne v. State of Kansas ex rel. Brewster*, 248 U.S. 112, 39 S. Ct. 32, 63 L. Ed. 153 (1918). "Having an actual controversy is key; an abstract controversy does not meet the constitutional standard because courts do not give advisory opinions." *Baker v. Hayden*, 313 Kan. 667, 672, 490 P.3d 1164 (2021).

19

Kansas' case-or-controversy requirement stems from the separation of powers doctrine embodied in the Kansas constitutional framework, not specific language, because Article 3 of the Kansas Constitution does not include any "case" or "controversy language." *Gannon v. State*, 298 Kan. 1107, 1119, 319 P.3d 1196 (2014).

> "That doctrine recognizes that of the three departments or branches of government, '[g]enerally speaking, the legislative power is the power to make, amend, or repeal laws; the executive power is the power to enforce the laws, and the judicial power is the power to interpret and apply the laws in *actual controversies*.'" 298 Kan. at 1119 (quoting *VanSickle v. Shanahan*, 212 Kan. 426, 440, 511 P.2d 223 [1973]).

Kansas law determines the existence of a case or controversy—justiciability. That said, federal law may be considered when analyzing justiciability. *Gannon*, 398 Kan. at 1119.

Under the Kansas case-or-controversy requirement, four things must be present for justiciability to exist: (1) the parties have standing; (2) the issues presented are not moot; (3) the issues are ripe, meaning issues have taken fixed and final shape rather than remaining nebulous and contingent; and (4) the issues raised do not present a political question. *Rivera v. Schwab*, 315 Kan. 877, 902, 512 P.3d 168 (2022), *cert. denied* 143 S. Ct. 1055 (2023). Two of these factors—standing and mootness—are at issue here. In addition, NRH and Lloyd argue that Gould's counsel had to be granted intervenor status to properly appeal, and that this court lacks jurisdiction because Gould acquiesced in the judgment. We address these arguments in the following order: standing, motion to intervene, mootness, and acquiescence.

Gould's counsel, in their reply briefs, argue that NRH and Lloyd have raised these jurisdictional questions for the first time on appeal, and that neither party filed a cross-appeal, so these issues are improperly raised and cannot be considered. This is incorrect, however, because the arguments raised by NRH and Lloyd attack this court's jurisdiction

20

to hear this case, and jurisdiction can be raised at any time, included for the first time on appeal. See *Kansas Bldg. Industry Workers Comp. Fund*, 302 Kan. at 666, 678.

A.      *Standing of Gould and His Counsel*

Both NRH and Lloyd question Gould's standing to bring this appeal. They argue that Gould, who is the sole appellant in this case and was the plaintiff in the underlying action, lacks standing because all the issues on appeal relate to his counsel's request for attorney fees for discovery disputes that were pending when the case settled. They argue that Gould's decision to forgo trial and instead enter a settlement in exchange for dismissal of the case with prejudice deprives him of standing to appeal pretrial discovery issues related to his attorneys.

Standing is part of justiciability and is also a component of subject matter jurisdiction. Because standing is jurisdictional, it can be raised for the first time on appeal. *In re L.L.*, 315 Kan. 386, 390, 508 P.3d 1278 (2022).

Our Supreme Court has "explained that if a person does not have standing to challenge an action or to request a particular type of relief, then 'there is no justiciable case or controversy' and the suit must be dismissed." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 750, 189 P.3d 494 (2008) (quoting *Kansas Bar Ass'n v. Judges of the Third Judicial Dist.*, 270 Kan. 489, 490, 14 P.3d 1154 [2000]).

Gould's counsel bear the burden of establishing standing. *Hayden*, 313 Kan. at 673. Under Kansas' two-part standing test, a party must demonstrate (1) they have suffered a cognizable injury and (2) a causal connection exists between the injury and the challenged conduct. A party establishes a cognizable injury (an injury in fact) when they suffer some actual or threatened injury because of the challenged conduct. *League of Women Voters of Kansas v. Schwab*, 317 Kan. 805, 813, 539 P.3d 1022 (2023).

21

At the hearing on Gould's counsel's motion to amend, Gould was not present. One of his attorneys stated "Mr. Gould is totally irrelevant. Mr. Gould is not part of the attorney fees and costs for discovery abuse. Totally irrelevant." Gould's counsel stated the fees they were seeking were "totally separate from" fees received under their contingency fee agreement with Gould. At oral argument before this court, counsel stated that they would not share with their client any money recovered from this appeal.

We agree with NRH and Lloyd that Gould cannot meet the first part of the standing test—he cannot demonstrate how he personally has suffered a cognizable injury by the district court denying his attorney request for fees. Gould received a settlement payment and from those funds satisfied his payment obligations to his counsel under his contingency fee agreement, so he does not owe any fees to his attorneys that he could be reimbursed for. See *Hernandez v. Pistotnik*, 60 Kan. App. 2d 393, 414-15, 494 P.3d 203 (2021) (holding client lacked standing to appeal a district court's sanctions against her attorney because the client failed to show that the sanctions award somehow harmed her). Cf. *Mitchell v. Kraft Pizza Co.*, 162 Fed. Appx. 801, 803 (10th Cir. 2006) (unpublished opinion) (holding client lacked standing to appeal sanction order against their attorney).

Still, Gould's counsel may have standing to appeal the denial of an attorney fee motion. See *Hernandez*, 60 Kan. App. 2d at 415. In Kansas, generally only an aggrieved party may appeal a judgment. *Blank v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984). In their reply briefs, Gould's counsel claim they meet this "aggrieved party status" to satisfy standing because they are being denied reimbursement for $353,037.38 of their expenditures during discovery due to Lloyd's and NRH's alleged discovery abuses. We agree that a sanctioned attorney has standing to appeal sanctions entered against him or her. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013) ("[A] party seeking to appeal must be aggrieved by the judgment or order from which the appeal is taken."); *Hernandez*, 60 Kan. App. 2d at 415 ("[The sanctioned attorney] is the real party in interest. As the person aggrieved by the sanctions

22

orders, he may appeal them."); *Mboumi v. Horton*, No. 123,546, 2022 WL 263112, at *6 (Kan. App. 2022) (unpublished opinion) (holding counsel has standing to appeal ordered sanctions).

That said, no sanctions order is being appealed here. The district court never entered a final order imposing sanctions for either the "Lloyd Saga" or the "Conley Affair." As to the Lloyd Saga, the district court stated, "At the time the [settlement] agreement was approved by the Court, there were no orders in place for the costs incurred by [Gould] related to Dr. Lloyd's cell phone." The district court found, "It is not correct to say the Court has awarded attorney fees related to the attempts to secure data from Dr. Lloyd's cell phone," explaining:

> "At most, the Court reserved the issue pending the results of Mr. Saas' investigation. The Court put the parties on notice that it may not award attorney fees due to statements by Mr. Mallery and Mr. Saas that there was a slim chance any information would be recovered from Dr. Lloyd's phone. Also, the Court advised the parties it would also consider the evidence presented by Dr. Lloyd's attorney tending to show Mr. Brown was absent from the room a good deal of the time Mr. Gould was undergoing his procedure. The attorneys for Mr. Gould point out this contradicts statements made by Mr. Brown in his deposition. Whatever the case, it is true that at this point counsel for the plaintiff merely have a *potential* statutory claim for fees under K.S.A. 60-237."

And as to Gould's claim against NRH regarding Conley, the district court found: "I'm of the opinion that the current situation regarding Newman Regional Health experts was not orchestrated or planned by the defense counsel. It was simply the result of the unexpected and unfortunate death of Mr. Conley." The court then stated: "This Court will decline [Gould's] invitation to impose sanctions against [NRH] and counsel for discovery violations." The district court ordered NRH to pay related fees and costs, but not as a sanction. Its authority to order those fees is unstated, yet unchallenged by any party.

23

Gould shows us no Kansas case where a court has found an attorney has standing to appeal a denial of attorney fees potentially awarded as sanctions. Even so, when assessing standing, we find no logical reason to distinguish between an attorney who was sanctioned and one who asserts that sanctions should have been awarded. Both attorneys in those scenarios are aggrieved parties, just on different sides of the same coin—one argues the sanctions imposed were in error and the other argues *not* imposing sanctions was an error. Gould's attorneys are sufficiently aggrieved by the order they are appealing to cross this initial standing hurdle.

B.      *Failure to Name Gould's Counsel as Appellants*

Yet Gould's attorneys are not parties to this appeal. This brings us to NRH and Lloyd's next assertion—that this court lacks jurisdiction over this appeal because the notice of appeal does not list Gould's counsel as the parties appealing; and because they never moved to intervene, this court lacks jurisdiction over their non-party claims. Gould's counsel reply that no motion to intervene is required for an attorney's appeal of an award of, or a refusal to award, sanctions.

With some exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. This is because the right to appeal is statutory and is not contained in the United States or Kansas Constitutions. *Harsch v. Miller*, 288 Kan. 280, 287, 200 P.3d 467 (2009).

In civil cases, our statute requires a notice of appeal to include the name of the party appealing: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." K.S.A. 2024 Supp. 60-2103(b); see *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637-38, 270 P.3d 1074 (2011).

24

The notice of appeal lists the "Plaintiff," Gould, as the party appealing, and the case caption lists Gould as the sole plaintiff. Lloyd alleges prejudice from being unsure whether Gould or his attorneys are appealing. Yet throughout litigation of this issue before the district court, Gould's counsel maintained that their interests in the sanctions or fees were independent from Gould's settlement.

At any rate, the Kansas Supreme Court has consistently interpreted K.S.A. 60-2103(b) liberally to ensure justice in all proceedings. *State v. Laurel*, 299 Kan. 668, 673, 325 P.3d 1154 (2014). It has observed that "a notice of appeal need not be overly technical or detailed" and has "generally considered whether the State has been prejudiced by a defendant's timely filed but otherwise faulty notice of appeal." 299 Kan. at 674. See *State v. Wilkins*, 269 Kan. 256, 269-70, 7 P.3d 252 (2000) (focusing on State's failure to show prejudice in finding notice of appeal sufficient to confer jurisdiction); *Hess v. St. Francis Regional Medical Center*, 254 Kan. 715, 718-20, 869 P.2d 598 (1994) (recognizing that a notice of appeal need not be too technical or detailed and should be broadly construed).

These cases counsel us to avoid dismissing a case for lack of jurisdiction based on technical violations of notice of appeal filing requirements. Instead, when a notice of appeal substantially complies with K.S.A. 2024 Supp. 60-2103(b), jurisdiction is properly conferred. See *Laurel*, 299 Kan. at 673; Supreme Court Rule 2.02 (2025 Kan. S. Ct. R. at 14) (requiring notice of appeal to be filed in the district court, to be under the caption of the district court case, and to have substantially complied with the judicial council form).

The intent of those challenging the district court's order denying fees here is clear from the notice of appeal's identification of the sole order being appealed. Similarly, in *Hernandez*, 60 Kan. App. 2d at 411, the sanctioned attorney who appealed was not listed as a party in the notice of appeal, but that notice of appeal listed only orders that concerned sanctions. The *Hernandez* panel found it sufficient:

25

"No doubt the better practice is for attorneys who wish to challenge sanctions orders against them to file a separate notice of appeal. But we should not dismiss an appeal under these circumstances for failure to name a party whose intent to appeal is otherwise clear from the notice. Here, the notices of appeal specifically purport to appeal orders that concern only the sanctions entered against [the sanctioned attorney]. And so the designation of the orders appealed provides sufficient evidence, by implication, of [the sanctioned attorney's] intent to appeal the order of sanctions." 60 Kan. App. 2d at 412.

Agreeing with that rationale and conclusion, we find that the notice of appeal substantially complies with K.S.A. 2024 Supp. 60-2103(b). No more is required.

And as the *Hernandez* panel pointed out, other Kansas appellate courts have reviewed similar sanctions appeals without questioning jurisdiction based on a technical issue with a notice of appeal. See, e.g., *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015); *In re Marriage of Stockham*, 23 Kan. App. 2d 197, 203, 928 P.2d 104 (1996) (examining postjudgment sanctions in a divorce case); see also *Gant v. Birk*, No. 114,823, 2017 WL 3203567, at *12-13 (Kan. App. 2017) (unpublished opinion) (finding it unlikely that an attorney must intervene to appeal sanction rulings); *Commercial Bank v. Hundley*, 06-1038-WEB, 2006 WL 1933763, at *2 (D. Kan. 2006) (unpublished opinion) (applying comparable rule about notice of appeal requirements and finding jurisdiction where appellant's attorneys' names were listed in the notice but were not specifically identified as parties taking the appeal).

The record reflects that the parties spent a good deal of time discussing the propriety of the attorney fees question. Given the extensive litigation before the district court, we cannot find that any party was blindsided or prejudiced by this appeal by Gould's counsel.

C. *Failure to Intervene*

Lloyd and NRH also assert that even if the notice of appeal was sufficient under K.S.A. 2024 Supp. 60-2103(b), Gould's counsel had to move to intervene. Again, we disagree.

In *Gant*, 2017 WL 3203567, at *12, another panel of our court considered, as a matter of first impression, whether a sanctioned attorney must move to intervene to appeal a sanctions order. In that case, the defendant's attorney (who later withdrew as counsel) was sanctioned for violating discovery orders. The sanctioned attorney eventually moved to intervene to appeal those sanctions. The district court denied his motion to intervene, finding the motion untimely. The sanctioned attorney appealed, arguing the motion to intervene was not untimely because the sanctions were not appealable until final judgment. 2017 WL 3203567, at *1. The panel concluded the sanctioned attorney who moved to intervene "likely did not need to file a motion to intervene" but did not err in doing so. 2017 WL 3203567, at *13.

There is a wrinkle in *Gant*. There, the sanctioned attorney argued that he needed to move to intervene, whereas here, the attorneys requesting sanctions argue they *were not* required to file such a motion. The sanctioned attorney in *Gant* argued such because if he were not required to move to intervene, he missed his window in which to timely appeal. But the filing of the motion to intervene would have successfully tolled the time for the sanctioned attorney to appeal. 2017 WL 3203567, at *13-14.

In so ruling, the *Gant* panel looked to federal law and concluded that federal courts, like Kansas via K.S.A. 60-2103(b), "also generally follow a rule that 'only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.' *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S. Ct. 586, 98 L. Ed. 2d 629 (1988)." *Gant*, 2017

WL 3203567, at *12. Yet the panel explained that an exception to that rule applies when a court sanctions a nonparty, such as an attorney:

> "Similar to K.S.A. 60-2103, Fed. Rule of Appellate Procedure 3(c) also requires a notice of appeal to 'specify the party or parties taking the appeal.' Nevertheless, federal courts recognize several exceptions to this rule. See, e.g., *Raley*, 642 F.3d at 1275 (listing subjects of civil contempt orders, sanctioned attorneys, class members who object to a judgment as possible exceptions to the rule). One such exception is that when a court sanctions a nonparty, such as an attorney, that nonparty may appeal. See, e.g., *Keach v. County of Schenectady*, 593 F.3d 218, 223 (2d Cir. 2010); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 497 F.3d 1316, 1319 (Fed. Cir. 2007); *Weeks v. Independent School Dist. No. I-89 of Oklahoma County, OK, Bd. of Educ.*, 230 F.3d 1201, 1207 (10th Cir. 2000). And while the United States Supreme Court does not appear to have directly addressed a nonparty attorney's right to appeal a sanctions order, it has held '[t]he right of a nonparty to appeal an adjudication of contempt cannot be questioned.' *Catholic Conf. v. Abortion Rights Mobilization*, 487 U.S. 72, 76, 108 S. Ct. 2268, 101 L. Ed. 2d 69 (1988). See also *Cunningham v. Hamilton County*, 527 U.S. 198, 119 S. Ct. 1915, 144 L. Ed. 2d 184 (1999) (addressing the appeal of a nonparty attorney who did not formally intervene)." *Gant*, 2017 WL 3203567, at *12.

We find *Gant* well-reasoned and hold that it was unnecessary for Gould's counsel to move to intervene to appeal the denial of sanctions against their opposing counsel in the case. See *Hernandez*, 60 Kan. App. 2d at 411-12, 415 (finding *Gant* well-reasoned and applying it; holding sanctioned attorney had standing to appeal even though he did not move to intervene and was not named in the notice of appeal). Gould's counsel personally appeared in district court, they are aggrieved because of a district court ruling, and they have interests that would not, on appeal, be adequately represented by the named parties to the lawsuit.

D.    *Mootness*

We next address Lloyd's assertion that this court lacks jurisdiction because any pending pretrial discovery issues became moot upon the settlement of the case. The determination whether an issue is moot is subject to de novo review. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020), *overruled on other grounds by State v. Phipps*, 320 Kan. ___, 2025 WL 1779842 (2025). "The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance." 311 Kan. at 593.

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. 311 Kan. at 590. Under the mootness doctrine, the court is to determine real controversies about the legal rights of persons and properties that are involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996). Once a court determines that an issue is moot, courts lack constitutional authority to review that issue.

An issue on appeal will be dismissed as moot only if it can clearly and convincingly be shown that the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016). A case is not moot if "it may have adverse legal consequences in the future." *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 4, 286 P.3d 866 (2012).

Lloyd asserts that the pretrial discovery issues became moot upon the settlement of the case. We agree, however, the issue of attorney fees for those mooted pretrial discovery issues remains, unless such fees are barred by language of the Settlement Agreement. A determination of mootness, as asserted by Lloyd, would thus require us to find that the Settlement Agreement precludes a post-settlement award of attorney fees.

But reaching that conclusion would be no different from a ruling on the merits of the appeal. And if we find that the Settlement Agreement does *not* preclude the fees Gould's counsel seek, then our judgment would not be ineffectual for any purpose, as an award of attorney fees could be entered on remand. See *Wiechman*, 304 Kan. at 84. Accordingly, we decline Lloyd's invitation to declare this issue moot.

    E.    *Acquiescence*

Finally, NRH and Lloyd argue that by accepting the settlement proceeds, Gould acquiesced in the district court's judgment, thus depriving this court of jurisdiction. In response, Gould's counsel argue no acquiescence occurred because the issues on appeal are separate from and do not affect the amount of Gould's settlement payments.

Because acquiescence involves jurisdiction, whether a party acquiesced to a judgment is a question of law subject to unlimited review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006). And because acquiescence involves jurisdiction, the issue may be raised at any time, including on appeal or on the court's own motion. See *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007).

The doctrine of acquiescence provides that a party cannot take the inconsistent position of challenging a judgment through an appeal after having already accepted either the burdens or benefits of that judgment. *Alliance Mortgage Co.*, 281 Kan. at 1271. "[W]here a party is found to have acquiesced in the judgment of a trial court, appellate jurisdiction is lacking and the party's appeal must be dismissed." *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497-98, 866 P.2d 1044 (1994). A party may not accept the benefits of a money judgment and then appeal "in the hope of obtaining greater damages on the same claims." *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 728-29, 206 P.3d 1 (2009). Accordingly, acquiescence occurs when a party collects money obtained through a judgment (in other words, accepted a benefit from the judgment), if they have

unconditionally and voluntarily done so. *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012). Likewise, it is inconsistent to receive a distribution of a judgment and then claim on appeal that the judgment was insufficient. *Troyer v. Gilliland*, 247 Kan. 479, 481, 799 P.2d 501 (1990). But implied waivers are not favored. So we should find acquiescence only when a party's actions "'"clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence."'" *Uhlmann*, 48 Kan. App. 2d at 17 (quoting *James v. Amrine*, 157 Kan. 397, 403, 140 P.2d 362 [1943]).

As with most "rules," the doctrine of acquiescence is subject to exceptions. *Brown v. Combined Ins. Co. of America*, 226 Kan. 223, 230, 597 P.2d 1080 (1979); see *Tharrett as Trustee of Roxine Poznich Revocable Trust v. Everett*, No. 125,999, 2024 WL 1954298, at *4-6 (Kan. App. 2024) (unpublished opinion) (analyzing several exceptions to the doctrine of acquiescence), *petition for rev. granted* 319 Kan. 836 (2024). One of these exceptions is separability, which provides that when a party to an appeal accepts payment of the judgment as directed by the district court, that party shall not be deemed to have acquiesced in the judgment when the issues on appeal do not affect the obligation for the payment or the right to receive that portion of the judgment. *McDaniel v. Jones*, 235 Kan. 93, 101-02, 679 P.2d 682 (1984). See *Hemphill*, 41 Kan. App. 2d at 732.

Gould asserts this separability exception:

"[W]hen a party to an appeal has paid any portion of a judgment rendered against such party, including the costs, such party will not be deemed to have acquiesced in the judgment so long as the issues on appeal cannot affect the payments made and the payment thereof is not involved in the issues on appeal. Likewise, any party to an appeal who accepts such payment shall not be deemed to have acquiesced in the judgment so long as the issues on appeal do not affect the obligation for the payment of or the right to receive such portion of the judgment." *Brown*, 226 Kan. at 231.

31

The separability exception generally applies only when a judgment consists of distinct parts, so that acquiescence to one portion does not affect another. See, e.g., *Huet-Vaughn v. Board of Healing Arts*, 267 Kan. 144, 147, 978 P.2d 896 (1999) (holding if a judgment involves separate and distinct matters, accepting the burdens or benefits of one part will not prevent an appeal as to the remaining contested parts of the judgment); *Wollard v. Peterson*, 145 Kan. 631, 633, 66 P.2d 375 (1937) (payment of principal amount of judgment was not acquiescence when appeal challenged only interest and attorney fees).

We are not persuaded that Gould's and his counsel's acceptance of the settlement payments amounted to acquiescence in the judgment that would preclude the fees now sought by Gould's counsel. The award of attorney fees sought by Gould's counsel's motion is claimed to be separate and distinct from amounts paid under the Settlement Agreement because fees awarded as a sanction would not affect the settlement amount paid to Gould. See *In re Estate of Moore*, 219 Kan. 719, 724-25, 549 P.2d 981 (1976) (reversing the district court's dismissal of the appeal based on acquiescence because "[t]he allowance of fees was separate and distinct from the orders of distribution relating to the real property and the . . . stock").

Accordingly, and considering precedent disfavoring acquiescence, we find that Gould's and Gould's counsel's acceptance of the settlement payments does not amount to an acquiescence that deprives this court of jurisdiction to consider the substance of this appeal.

## II. THE DISTRICT COURT CORRECTLY DENIED GOULD'S MOTION FOR ATTORNEY FEES.

Having rejected defendants' challenges to this court's jurisdiction, we reach the four substantive arguments Gould's counsel raise on appeal.

1.  The district court erred by holding it lacked jurisdiction to assess the attorney fees and costs for the two discovery disputes;

2.  the district court erred by ruling that the Settlement Agreement foreclosed additional collection of attorney fees because "claims" and "costs" are not the same thing;

3.  the district court erred in the amount it set for their hourly rate in its first attorney fees award; and

4.  this court should award attorney fees and costs for NRH's and Lloyd's discovery disputes rather than remand the case to the district court to impose any such awards for the alleged discovery abuses.

A.  *The district court's finding that it lacked jurisdiction was erroneous.*

First, Gould argues the district court erred by holding it no longer had jurisdiction to assess the attorney fees and costs for the discovery disputes with NRH's expert and Lloyd's text messages after it dismissed the case with prejudice.

Two potential attorney fees awards are at issue here: (1) fees for Lloyd's missing text messages; and (2) fees for NRH's substitution of its expert, Conley. As for Lloyd, the district court initially ordered an award of attorney fees to Gould but stayed that order after it granted a motion to reconsider and ordered additional discovery to determine whether the text messages could be located by other means. The discovery was to determine whether sanctions were necessary under K.S.A. 2022 Supp. 60-237(e) for failure to preserve electronically stored information—if Lloyd's lost texts could be recovered by other means, then sanctions would be inappropriate under that statute. As for NRH, the district court verbally ordered NRH to pay Gould's attorney fees and costs associated with Conley's substitution, but it specifically noted that it did *not* find sanctions appropriate. Still, Gould offered no itemization of attorney fees and costs to the district court until after the parties had settled, so no written fee order was entered.

But before a final order on either of these issues was entered, the parties settled the case. Section 8 of the settlement required:

"Concurrently with the execution of this Agreement, counsel for the undersigned has delivered to counsel for the Defendants an executed Dismissal with Prejudice of the Action. The Plaintiff has authorized his attorney to execute this Dismissal on his behalf and hereby authorizes counsel for the Defendants to file said Dismissal with the court and enter it as a matter of record upon the Court's approval of the settlement."

In reading Section 8, the district court found that the Settlement Agreement required dismissal with prejudice, thus divesting the court of jurisdiction to award the attorney fees requested:

"The term 'Action' as used in the Settlement Agreement is defined as 'the litigation filed by Plaintiff against Defendants on May 20, 2019, in the District Court of Lyon County, Kansas, Case No. 2019-CV000054.' Settlement Agreement, p. 1. The term 'litigation' is not defined within the Settlement Agreement; however, it generally means 'a legal action or proceeding (such as a lawsuit)'. . . .

"On August 8, 2023, as requested by the plaintiff and his attorney, the Court approved the settlement of this case. Pursuant to Section 8, the Court then dismissed the 'Action'. Counsel for the plaintiff now argues that even though the 'Action' has been dismissed as required by the Settlement Agreement, the Court can still order attorney fees. On this point, the Court disagrees. Counsel For the plaintiff relies on many cases that state the issue of attorney fees is separate from a resolution of the merits either through court or jury verdict or perhaps upon summary judgment. This may be true when the claimed fees are authorized by statute or contract and when there is a resolution on the merits through a court or jury verdict or through summary judgment. However, this case was not resolved on its merits. It was resolved through compromise and settlement.

"There can be no dispute, the terms of the Settlement Agreement require dismissal of the 'Action'. The term 'litigation' is used to define 'Action'. Within the Settlement Agreement, 'litigation' is a broad term that encompasses all issues within this

34

legal action. If the legal action is dismissed, there is no case and this Court has no jurisdiction to order attorney fees to be paid. Both the plaintiff and plaintiff's counsel requested the Court approve the Settlement Agreement which, under the terms of the Settlement Agreement triggers the dismissal of the 'Action'. The Court finds this dismissal removes from the Court any ability to award attorney fees as requested by the plaintiff's counsel."

Our review of whether the district court had subject matter jurisdiction over the case is de novo. *State v. Woolverton*, 284 Kan. 59, 67, 159 P.3d 985 (2007).

The district court (and NRH and Lloyd on appeal) contends that because this case was resolved via compromise and settlement, the cases that hold awards of attorney fees are ancillary matters over which the district court retains jurisdiction after resolution or appeal do not apply. But there is little convincing rationale to support this distinction between attorney fees awarded as sanctions, by a prevailing party statute, or by contract and those attorney fees awarded by the court's inherent power to award attorney fees. See *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 419-20, 197 P.3d 370 (2008) (holding a district court possesses inherent powers to sanction when "'reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law'").

Common sense and logic do not support such a distinction. For example, imagine a scenario where the parties settle a case, and that settlement requires that the case be dismissed with prejudice, and the case is dismissed accordingly. Yet after the dismissal, the party obligated to pay under the settlement refuses to do so. Under the rule that NRH and Lloyd advance on appeal, that court would have no jurisdiction to award attorney fees because the case was resolved by a settlement. See *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379-80, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (stating ancillary enforcement jurisdiction exists "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees");

35

*National City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011) (holding district court had ancillary jurisdiction after judgment was entered, to give effect to the remedy it granted).

True, it is a fundamental principle that jurisdiction over matters related to the merits of a case is terminated upon dismissal. See K.S.A. 2024 Supp. 60-241(a). And the district court properly found that Section 8 of the Settlement Agreement required the court to dismiss the Action with prejudice upon its approval of the settlement.

We disagree with the district court's holding that it did not have subject matter jurisdiction to enter an award of attorney fees. As another panel of this court held "it does not matter whether fees are awarded under a prevailing party statute or rather are awarded as a sanction; because both awards are collateral to the merits of the action, the district court retains jurisdiction to consider attorney fees." *Hernandez*, 60 Kan. App. 2d at 407; see also *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990) ("A decision on the merits is final for purposes of appeal even if a request or motion for attorney fees attributable to the case has not yet been determined.").

We find no binding Kansas case holding that a district court retains jurisdiction to consider attorney fees following a dismissal with prejudice. Still, the time-honored case of *In re Noble's Estate*, 141 Kan. 432, 437, 41 P.2d 1021 (1935), suggests ancillary jurisdiction exists when necessary to decide collateral issues over which no jurisdiction has been conferred:

> "In 1 Woerner on American Law of Administration (3d Ed.) p. 483, it is said:
> 'Where jurisdiction is conferred over any subject matter, and it becomes necessary in the adjudication thereof to decide collateral issues or incidental matters over which no jurisdiction has been conferred, the court must, of necessity, decide such collateral issues.'"

36

Other jurisdictions apply that principle to motions for attorney fees. For example, in *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 394-95, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), the United States Supreme Court held that a court retains jurisdiction to impose Rule 11 sanctions even after the plaintiff voluntarily dismisses the complaint:

> "It is well established that a federal court may consider collateral issues after an action is no longer pending. For example, district courts may award costs after an action is dismissed for want of jurisdiction. This Court has indicated that motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.' Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees. [Citations omitted.]" 496 U.S. at 395.

See *Butt v. United Brotherhood of Carpenters & Joiners of America*, 999 F.3d 882, 887 (3d Cir. 2021) (holding ancillary enforcement jurisdiction does not end when a court renders a judgment on the merits or dismisses a case); *In re Austrian & German Bank Holocaust Litigation*, 317 F.3d 91, 98 (2d Cir. 2003) ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees."). See also *Toumajian v. Frailey*, 135 F.3d 648, 657 (9th Cir. 1998) (holding that "despite a lack of subject matter jurisdiction, a district court may properly award sanctions under Fed. R. Civ. P. 11" because "an award of sanctions involves the determination of a collateral issue and not an adjudication of the merits of a 'case or controversy'"); *Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir. 1989) (holding that "the district court had jurisdiction to entertain and decide the Rule 11 motion after defendants suffered a voluntary dismissal under Rule 41[a][1][i]"); 13 Fed. Prac. & Proc. Juris. § 3523.2 (3d ed.) ("One of the best-established uses of ancillary jurisdiction is over proceedings concerning costs and attorney's fees.").

Finding this authority persuasive, we hold that the district court retained ancillary jurisdiction to consider collateral matters, including an award of attorney fees, after the

parties settled the case and the court dismissed it with prejudice. We thus find that the district court erred to the extent it denied the requested attorney fees on the basis that it lacked subject matter jurisdiction.

B. *The district court's interpretation of the Settlement Agreement was correct.*

This brings us to NRH and Lloyd's next argument—that even if the district court had jurisdiction, the terms of the Settlement Agreement released any claims for attorney fees and costs for discovery disputes, as the district court also held. We will uphold a district court's decision that reaches the correct result, even if it relied on the wrong ground for its decision. See *Gannon*, 302 Kan. at 744. In our analysis of this issue, we also address Gould's counsel's second issue on appeal that the "claims" released in the agreement do not include "costs," such as attorney fees.

*The Settlement Agreement's terms are broad.*

The Settlement Agreement defined "Action" as "the litigation filed by Plaintiff against Defendants on May 20, 2019, in the District Court of Lyon County, Kansas, Case No. 2019-CV-000054." "Defendants" are identified as "Patricia D. Crawley, M.D., and Newman Memorial County Hospital d/b/a/ Newman Regional Health." "Incident" referred to "all claims against Defendants referenced in Plaintiff's Petition in Case No. 2019-CV-000054 filed in the District Court of Lyon County, Kansas relating to the medical care and treatment of Plaintiff Richard Gould by Defendants on May 25, 2017, and all events related thereto." "Parties released" lists "Defendants . . . together with any of their . . . employees." "Released Claims" is defined as "all claims against Defendants, causes of action against Defendants, or interests described in Section 2 of this Agreement and defined as Incident or Action above."

Section two, titled "Released Claims," reads:

"For the consideration set forth in Section 3 herein, Plaintiff forever releases the Parties Released, from all claims and causes of action, which may ever be asserted by the undersigned and/or the undersigned's executors, administrators, successors, assigns, or others, whether such claims or causes of action are presently known or unknown, asserted or unasserted, present or future, direct or indirect, which in any way arise out of the Action, or which in any way involve the diagnosis, care and treatment, or the failure to diagnose or treat Richard Gould at any time to the present, including but not limited to any private or other cause of action that arises under contract, common law, Title XVIII or XIX of the Social Security Act (Pub. L. 74-271), or any other federal or state law, as currently in effect or hereinafter amended."

In exchange for the consideration paid to Gould, he agreed

"that the above-referenced consideration is being accepted as full compensation for any and all injuries, damages, and losses (past, present, and future, known or unknown, asserted or unasserted, direct or indirect), which were or ever could be claimed in connection with the Action."

The settlement also had a final resolution clause stating:

"PLAINTIFF HAS COMPLETELY READ THIS AGREEMENT AND FULLY UNDERSTANDS AND VOLUNTARILY ACCEPTS IT FOR THE PURPOSE OF FINAL RESOLUTION AND SETTLEMENT OF ANY AND ALL CLAIMS, DISPUTED OR OTHERWISE, FOR THE EXPRESS PURPOSE OF PRECLUDING FOREVER ANY OTHER CLAIMS ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE INCIDENTS, INJURIES, OR DAMAGES ABOVE MENTIONED."

A Settlement Agreement is a type of contract and is, therefore, governed by contract law. See *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 323-24, 961 P.2d

1213 (1998). An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). Thus, this panel is not bound by the district court's interpretation of the Settlement Agreement. See 308 Kan. at 936 (appellate court is not bound by lower court's interpretation of a contract).

> ""'It is the duty of courts to sustain the legality of contracts in whole or in part when fairly entered into, if reasonably possible to do so, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. . . . [T]he paramount public policy is that freedom to contract is not to be interfered with lightly." [Citations omitted.]' *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81 (2005)." *Wasinger v. Roman Catholic Diocese of Salina*, 55 Kan. App. 2d 77, 80, 407 P.3d 665 (2017).

See also *Delaware Township. v. City of Lansing*, 316 Kan. 86, 93, 95, 512 P.3d 1154 (2022) (quoting *Wasinger*). Settlement agreements are favored, and they generally bar pre-existing claims directly tied to the settled dispute. *In re Estate of Engels*, 10 Kan. App. 2d 103, 106, 692 P.2d 400 (1984).

We agree with the district court that the Settlement Agreement precludes any other awards, including one for attorney fees. Section 2 of the Settlement Agreement releases all claims not only by Gould but by "others" "which in any way arise out of the Action." See Black's Law Dictionary 311 (12th ed. 2024) (defining "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional"). This plain language releases Gould's counsel's claim for fees, as they arise out of Gould's medical malpractice case. The requested attorney fees directly arise out of and relate to the incident settled, so recovery of attorney fees on top of the settlement is prohibited by the language of the Settlement Agreement. If not for Gould's injury, his counsel would have no claim for attorney fees.

Additionally, the Settlement Agreement states that it resolves all "disputes," not merely claims, to forever preclude any other claims arising out of or in any way connected with Gould's injuries. Gould's counsel's motion for attorney fees based on discovery disputes that arose during Gould's medical malpractice case is a claim for fees or costs connected with Gould's injuries, so that claim is barred by the language of the Settlement Agreement.

Finally, the Settlement Agreement states that the payment is full compensation for all injuries, damages, and losses which could be claimed in connection with the Action:

> "The undersigned acknowledges that the above-referenced consideration is being accepted as full compensation for any and all injuries, damages, and losses (past, present, and future, known or unknown, asserted or unasserted, direct or indirect), which were or ever could be claimed in connection with the Action."

We disagree with Gould's counsel's argument that attorney fees are not "claims," but "costs." Contrary to Gould's assertions, the Kansas Supreme Court has rejected the notion that attorney fees are generally included in "costs":

> "Attorney fees are not a part of costs, absent express statutory authority. See *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 700, 366 P.2d 219 (1961). Attorney fees may be chargeable as costs where specific statutory provisions allow recovery. See *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 269, 737 P.2d 6 (1987). Where the legislature uses the word 'costs,' it means the fees and charges of the court such as filing fees, fees for service of process, and the like. See *Divine v. Groshong*, 235 Kan. 127, 141, 679 P.2d 700 (1984)." *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 703, 957 P.2d 379 (1998).

When an attorney seeks to recover fees, he or she does so by making a claim for fees. Only after a court orders a payment of such fees in a fixed amount may fees be included in K.S.A. 2024 Supp. 60-2001(d)'s definition of "additional court costs."

41

We find that the language of the Settlement Agreement fails to preserve Gould's counsel's right to pursue attorney fees. Under its terms, the Settlement Agreement included the disputed fees and settled the entire litigation between the parties.

Our holding is supported by a legal presumption. In *In re Estate of Engels,* another panel of this court relied on a presumption to determine whether an agreed settlement of a contested will barred a later award of attorney fees. Our panel concluded that it did—"[i]n the absence of language to the contrary, it must be presumed the parties intended to settle the entire dispute." 10 Kan. App. 2d at 107. So we presume that a settlement of the underlying claim also settles attorney fees, unless the settlement specifically carves out the ability for a party to seek an award of attorney fees.

Nothing in the Settlement Agreement suggests that Gould's counsel retain the right to seek attorney fees, despite that agreement. Gould's counsel knew that NRH believed the Settlement Agreement released all claims by Gould's counsel for attorney fees, including those related to Lloyd's cell phone and Conley. Yet rather than dispute that issue in the Settlement Agreement, Gould's counsel chose not to address it and to let the court decide the fee dispute.

Our holding is also supported by the well-established rule that a Kansas court may not award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees. *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009). See also *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 279, 241 P.3d 15 (2010) ("The 'American Rule' is well established in Kansas so that, in the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees."). We uphold the district court's decision that no agreement between the parties allows the attorney fees counsel now seek. Gould's counsel also contend that they seek fees as a sanction under K.S.A. 2022 Supp. 60-237. But the district court's order relating to the Lloyd emails was

42

merely a potential sanction that depended on discovery still ongoing when the case settled, and the district court expressly held that its order of fees to reimburse Gould's counsel for expenses related to the substitution of an expert for Conley was not a sanction. So we find no basis for a fee award under that statute.

Accordingly, we affirm the district court's ruling that the Settlement Agreement barred Gould's counsel from recovering additional fees. Given that ruling, we need not address the remaining issues Gould raises on appeal.

### III. GOULD'S COUNSEL ARE NOT ENTITLED TO ATTORNEY FEES FOR THIS APPEAL.

Gould's counsel have recently moved for $199,575.50 in attorney fees and costs for this appeal, citing Kansas Supreme Court Rule 7.07(b)(2) (2025 Kan. S. Ct. R. at 52). Counsel support their motion with an affidavit specifying the nature and extent of their services, and other factors considered to determine the reasonableness of the fee. Rule 7.07(b)(2) permits us to award reasonable attorney fees on appeal when the district court had authority to award attorney fees. Gould's counsel contend that the district court had authority to award fees under K.S.A. 2022 Supp. 60-237 for discovery abuse.

NRH and Lloyd's response is twofold. First, they contend that because the Settlement Agreement barred the district court from awarding additional attorney fees against NRH or continuing to pursue a pending pretrial discovery issue relating to Lloyd, this court cannot award attorney fees on appeal related to these issues. Second, they contend that counsel's fee request is unreasonable—just considering the attorney time and assuming 40 hours of billable time per week, "Appellant asks this Court to award over 9 weeks' pay for an appeal challenging the district court's failure to award additional attorney fees on top of those Appellant's attorneys already took from their client as part of the settlement."

43

Based on our holding above, we find that the district court lacked authority to grant Gould's counsel's fee motion under K.S.A. 2022 Supp. 60-237 or under the Settlement Agreement. It did not find sanctionable conduct warranting fees under the statute, and it found no contract permitting fees. We thus lack authority to award fees on appeal under Rule 7.07(b)(2), so we deny this motion.

Affirmed.